**In the Matter of Robert Estil HALE, Bankrupt.**

**No. 67–BK–430–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

Oct. 27, 1967.

Philip M. Sadler, Gilmer, Sadler, Ingram, Thomas & Sutherland, Pulaski, Va., for Clara Philpott.

W. C. Dillow, Narrows, Va., for bankrupt.

### OPINION and JUDGMENT

DALTON, Chief Judge.

This matter involves a petition for review of a bankruptcy order granting a complete discharge to the bankrupt, Robert Estil Hale.

On June 15, 1967 the bankrupt filed his voluntary petition. Objections to the discharge were filed and duly set for hearing. A hearing was held, and the referee, after hearing evidence and argument, entered an order on September 15, 1967 overruling the objections to the discharge and ordering the discharge to be granted. By petition dated September 16, 1967 the objecting creditor, Clara

Philpott, seeks review of the order so entered. The grounds upon which the petitioner objects to the bankrupt's discharge may be summarized as follows:

(1) The bankrupt "knowingly" understated his income on his petition.

(2) The bankrupt failed to explain satisfactorily the use of his income.

(3) The bankrupt has been granted two previous discharges in bankruptcy, and by obtaining another discharge shortly after the expiration of the six year waiting period provided for in the statute he perverts the "very purpose" of the Bankruptcy Act by evading payment of his just obligations.

(4) The bankrupt should be required to convert his original petition to a petition under Chapter XIII of the Bankruptcy Act, thereby attempting to pay his bills.

A review of the record before us reveals that the bankrupt is a wage-earner with a wife and five children living at home. All of the children are in school. The bankrupt is employed at the National Gypsum Company in Roanoke. The objecting creditor obtained a judgment against the bankrupt and garnisheed his wages. Because of two prior garnishments, this made the bankrupt fearful of losing his job and prompted him to file his petition.

In his petition the bankrupt stated in the Statement of Affairs that he made approximately $4,000 during each of the two years immediately preceding the filing of the petition. At the hearing, however, he introduced in evidence W–2 forms prepared by his employer which showed that his net earnings for the year 1966 amounted to $5,218.04 while his gross earnings were $6,145.66 and that his gross earnings for 1966 were $6,145.00. When asked what became of his salary, the bankrupt testified that the whole amount was used to support his family. The bankrupt admitted that he received a tax refund for 1966 amounting to about $400.00, which he used to pay his bills. There is also no denial of the fact that the bankrupt received complete dis-

charges on two previous voluntary petitions filed in 1954 and 1960.

Upon consideration of the record before us and each of the petitioner's objections to the bankrupt's discharge, the court is of the opinion that, for the reasons to be stated below, the referee's order granting the discharge should be sustained.

■■■ Applicable to the issues before the court are these well-settled principles: General Order 47, Title 11 U.S. C.A. following section 53, declares that, upon review, the district judge shall accept the referee's finding of fact unless they appear on their face to be "clearly erroneous"; the initial burden of proof is on the objecting creditor to prevent the bankrupt's discharge, that is, the objecting creditor must make out a prima facie case, McMullin v. Todd, 228 F.2d 139 (10th Cir. 1955); the grounds for objection to a discharge set forth in Section 14 of the Bankruptcy Act are exclusive, and unless one of these grounds is proved the discharge must be granted, International Shoe Co. v. Kahn, 22 F.2d 131 (4th Cir. 1927); Section 14 of the Act must be construed liberally against the objecting creditor and liberally in favor of the bankrupt, Roberts v. W. P. Ford & Sons, 169 F.2d 151 (4th Cir. 1948).

The petitioner's first contention, that the bankrupt is barred from a discharge because he "knowingly" understated his income in his Statement of Affairs, is based upon Section 14, sub. c(1) of the Act (11 U.S.C.A. § 32(c) (1)) which provides that a discharge shall be denied when the Court is satisfied that the bankrupt has "committed an offense punishable by imprisonment as provided under title 18, United States Code, section 152." Section 152 of title 18 provides punishment for "[w]hoever knowingly *and* fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding". (emphasis supplied).

While the petitioner has alleged that the bankrupt "knowingly" understated his income, he made no allegation that he "fraudulently" did so. In In re Topper,

229 F.2d 691, 693, 59 A.L.R.2d 787 (3rd Cir. 1956) the Court noted that while it is true that the Court of Appeals for the Second Circuit in 1944 "bow[ed] to the precedents which, in practical effect, have read the word 'fraudulently' out of the statute * * *.", the same court some two years later in Tancer v. Wales, 156 F.2d 627, 628, 1 Cir., read the word "fraudulently" back into the statute. The court in *Topper* went on to note that the words of the statute requiring that the testimony be given "knowingly and fraudulently" in order to bar the bankrupt's discharge mean that there must be an actual fraudulent intent on the part of the bankrupt to hinder, delay or defraud his creditors. 229 F.2d at 693.

■■■ In light of this authority it is clear that the petitioner has not met his burden of alleging and proving that not only was the petitioner's false oath "knowingly" made but that it was also made "fraudulently", that is with an actual intent to hinder, delay or defraud his creditors. This would appear to be a difficult burden, indeed, since the bankrupt's good faith is established by the fact that at the hearing he corrected his erroneous statement of earnings by introducing into evidence W-2 forms giving his exact earnings for the two year period in question.

Turning to the petitioner's second ground for opposing the bankrupt's discharge, Section 14, sub. c(7) of the Act (11 U.S.C. § 32(c) (7)) provides that a discharge shall be denied where the bankrupt has "failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities". In Roberts v. W. P. Ford & Sons, supra, the court, in reversing the action of the Referee in denying a discharge to a wage-earner, discussed this provision of the Act. After pointing out that the provisions of the Bankruptcy Act are to be construed liberally in favor of the bankrupt, the court stated as follows, 169 F.2d at 152, 153:

> The provisions authorizing the denial of a discharge for failure * * * to explain satisfactorily the loss of

assets \* \* \* manifestly mean something other than \* \* \* failure to explain the loss or deficiency of assets by one who has no assets other than his wages or salary which he has spent on living expenses as soon as received. \* \* \* Where the salary \* \* \* is not in excess of what might reasonably be required for living expenses considering the manner of life of the bankrupt, where there are no circumstances showing fraud or bad faith and where the bankrupt testifies that he has spent the salary in living, his discharge may not be denied because he cannot explain in detail where all of the salary went or because of minor contradictions in estimates as to some of the items.

■ The Court is of the opinion that the instant case is squarely controlled by the *Roberts* decision. As in that case, the petitioner here is unable to support any theory of fraud or bad faith on the part of the bankrupt. The bankrupt testified that his entire salary was spent for living expenses, a number of which he specifically enumerated, and these expenditures were not, in the opinion of the Referee, unreasonable.[1] All that the petitioner can possibly say against the bankrupt is that he did not explain in sufficient detail what became of a salary which was no more than one in his circumstances was likely to spend on living expenses. As was held in the *Roberts* decision, this is not sufficient grounds for denying a discharge.

Turning to the petitioner's third ground for contesting the Referee's order granting a discharge to the bankrupt, Section 14, sub. c(5) (11 U.S.C. § 32 (c) (5)) provides that a discharge shall be denied where the bankrupt "in a proceeding under this Act commenced within six years prior to the date of the filing of the petition in bankruptcy had been granted a discharge \* \* \*." The petitioner argues that the bankrupt has been granted two previous discharges in bankruptcy on voluntary petitions and that to grant a third discharge shortly after the expiration of the six year period provided for in Section 14, sub. c(5) would be "highly inequitable" in that it would allow the bankrupt to evade the just debts of his creditors thereby "perverting the very purpose of the Bankruptcy Act."

■ One of the primary purposes of the bankruptcy statutes is to give the honest debtor the opportunity to reinstate himself in the business world by relieving him from the payment of his dischargeable debts. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Congress having expressly provided that a bankrupt must wait six years before receiving further relief in another bankruptcy proceeding, the Court may not rewrite the statute on the basis of the equitable considerations advanced by the petitioner. It is a well established rule that a bankrupt is not to be denied a discharge on general equitable principles but only when one or more statutory grounds of objection are proved. Johnson v. Bockman, 282 F.2d 544 (10th Cir. 1960).

■ Turning to the petitioner's last objection to the referee's order, it is clear that a wage earner's plan under Chapter XIII is, from beginning to end, entirely voluntary with the debtor. See Rice v. Mimms, 291 F.2d 823 (10th Cir. 1961); In re Hendren, 240 F.Supp. 807 (S.D.Ohio 1965). No provision is made for involuntary proceedings. Neither of these sections (see 621 and 622) provides for the filing of a Chapter XIII petition against a debtor, nor does any other section so provide.

The Referee's order of discharge is hereby affirmed.

---

1. While it is true that the objecting creditor presented three witnesses who testified that in the locality in which the bankrupt lived he should have no trouble in supporting his family and paying his bills, this evidence was regarded by the referee as "controversial and having little bearing on this particular bankrupt and his large family." This finding is supported by the evidence, is not clearly erroneous and must be accepted by the court on this review.