In the Matter of Victoria Ellen DEE, Debtor.

PITTSBURGH NATIONAL BANK, Plaintiff,

v.

Victoria Ellen DEE, Defendant.

Bankruptcy No. 79–1081.
Adv. No. 80–151.

United States Bankruptcy Court,
W. D. Pennsylvania.

Oct. 17, 1980.

Alexander C. Sherrard, Pittsburgh, Pa., for plaintiff.

Douglas A. Campbell, Campbell, Lampl & Levine, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

In this adversary proceeding, Pittsburgh National Bank, the plaintiff, petitions the Court to deny the discharge of Victoria Ellen Dee, the defendant, pursuant to section 727(a)(2) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et. seq.* (the Code). Section 727(a)(2) provides in pertinent part that the Court shall grant the debtor a discharge unless

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed,—

(A) property of the debtor, within one year before the date of the filing of the petition; ...

11 U.S.C. § 727(a)(2). For the reasons that follow, the Court concludes that the plaintiff has failed to meet its burden of proving that Mrs. Dee possessed actual intent to "hinder, delay or defraud a creditor." Actual intent to hinder, delay or defraud, as distinguished from constructive intent, is an essential element of a successful cause of action under section 727(a)(2) of the Code.

The Court having heard the evidence at trial and having considered the testimony and the parties' briefs, enters the following:

### 1. Findings of Fact

On December 28, 1979, Mrs. Dee filed a voluntary petition in bankruptcy seeking relief under Chapter 7 of the Bankruptcy Code. In her petition, Mrs. Dee listed an unsecured claim of Pittsburgh National Bank in the amount of $122,171.63, which arose out of her personal guarantee of a loan to Pedemerx, Inc., in early 1978. On March 10, 1980, Pittsburgh National Bank filed a complaint seeking the denial of Mrs. Dee's discharge. An answer was duly filed by the defendant on April 7, 1980, and the matter was tried to the Court on April 17, 1980.

In November, 1975, the Debtor and her husband, William F. Dee, III, purchased a residential home located at 1010 South Trenton Avenue, Pittsburgh, Pennsylvania, for the sum of $53,000.00. In connection with this conveyance, the Debtor and her husband granted to Security First Federal & Loan Association a mortgage dated November 26, 1975, in the original amount of $42,000.

By their deed, dated January 31, 1979, Mrs. Dee and her husband conveyed their residence to her parents, Rocco A. Perla and Mary A. Perla, in consideration of $1.00 and subject to the aforesaid mortgage given to Security First Federal & Loan Association. When the Debtor signed the deed conveying her home, she did not know that she was signing a deed or that she was causing a legal transfer of the ownership of the property. Mrs. Dee signed the deed simply because her husband requested her to sign a paper, as he often did with papers concerning their financial affairs. Mr. Dee purposely failed to explain to his wife that she

was in fact conveying their home to her mother and father. Moreover, Mr. Dee and Mr. and Mrs. Perla agreed among themselves not to divulge to Mrs. Dee that she had conveyed the property.

Mrs. Dee is primarily a homemaker who manages the Dee household and takes care of her three children. Mrs. Dee also teaches aerobic dancing and volunteers part–time as a clerical worker at her husband's employment agency. The Debtor is not knowledgeable regarding financial matters and has delegated to her husband the sole responsibility of managing their household financial affairs.

At the time of the conveyance of her home, Mrs. Dee did not know that she was indebted to Pittsburgh National Bank. She became aware of her personal indebtedness in December, 1979, when her counsel explained to her that she was liable as a guarantor. William Dee, the Debtor's husband, was president and one of the principal owners of Pedemerx, Inc., an Athlete's Foot franchisor. The financing of Pedemerx, Inc. was obtained through Pittsburgh National Bank in late 1977. Mrs. Dee had no direct relationship with the business of Pedemerx, Inc. She was neither an officer, shareholder, director or employee of the corporation, nor was she involved in the negotiation of the loans. Mrs. Dee did, however, sign a guaranty agreement in March, 1977, wherein she became jointly and severally liable, as a surety, for Pedemerx's obligations in the amount of $111,065.12. She signed this guaranty agreement in her home at her husband's request, without any explanation from him other than the document had to be signed in order to facilitate a business loan.

Pedemerx, Inc. was unable to pay the installments on the indebtedness and, on February 1, 1979, the Debtor's husband, as president of Pedemerx, Inc., filed a complaint in the Court of Common Pleas of Allegheny County for the dissolution of the corporation, and a complaint for the appointment of a receiver. On March 14, 1979, Pittsburgh National Bank entered judgment by confession against the Debtor and her husband under the guaranty agreement executed in March, 1977. Pittsburgh National Bank caused a writ of execution to be issued upon the judgment and served the Perlas as garnishees on March 20, 1979. The Debtor and the other parties to the loan petitioned to open the judgment. This action is still pending in the Court of Common Pleas of Allegheny County. By their deed dated February 1, 1979, which was not recorded until December 19, 1979, the Debtor's parents, Rocco A. Perla and Mary A. Perla, reconveyed the property to the Debtor and her husband, in consideration of $1.00.

### 2. Discussion

### A. Burden of Proof

Section 727 of the Code embodies the historic purpose of bankruptcy law to "relieve the honest debtor from the weight of oppressive indebtedness and to permit him to start afresh ...," *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 554–555, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915); and to afford the Debtor "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre–existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934), 54 S.Ct. 695, 699, 78 L.Ed. 1230. As under section 14 of the Bankruptcy Act, 11 U.S.C. § 32, the predecessor to section 727 of the Code, the right to discharge under the Code is statutory and does not lie within the discretion of the court. Section 727 must be construed liberally in favor of the Debtor and strictly against the objector. *See, e. g., In re Decker*, 5 BCD 101, 103 (3d Cir. 1979); *Bank of Pennsylvania v. Adlman*, 541 F.2d 999, 1003 (2d Cir. 1976); *In re Pioch*, 235 F.2d 903, 905 (3d Cir. 1956).

Pittsburgh National Bank has the burden of proving that Mrs. Dee is not entitled to a discharge. The plaintiff erroneously contends that the burden shifts to the Debtor once the plaintiff makes out a prima facie case. Rule 407 of the Bankruptcy Rules, which continues in effect under the Code, H.R.Rep.No.95–595, 95th Cong., 1st Sess. 308, U.S.Code Cong. & Admin.News 1978, p.

5787, provides: "At the trial on a complaint objecting to discharge, the plaintiff has the burden of proving the facts essential to his objection." Significantly, Rule 407 superseded the proviso to section 14(c) of the Bankruptcy Act, 11 U.S.C. § 32(c), which was construed by case law as shifting the burden of proof to the bankrupt once the plaintiff makes out a prima facie case. *See, e. g., In re Melnick,* 360 F.2d 918, 919–20 (2d Cir. 1966); *In re Finn,* 119 F.2d 656, 657 (3d Cir. 1941). After the promulgation of Rule 407, the courts have uniformly held that the objector has the burden of proving that the debtor is not entitled to a discharge. *E. g., Matter of Martin,* 554 F.2d 55, 58 n.1 (2d Cir. 1977). This allocation of burden of proof continues under the Code. Rule 407 does not govern the shift of the burden of going forward with the evidence, but leaves to the courts the formulation of such rules. 1A Collier on Bankruptcy ¶ 14.12 at 1304 (14th Ed. 1978).

Accordingly, it is incumbent on Pittsburgh National Bank to prove:

(1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition, (2) with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code, (3) that the act was that of the debtor or his duly authorized agent, [and] (4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done ...

4 Collier on Bankruptcy ¶ 727.02 at 727–6 (15th Ed. 1980).

It is undisputed that the act complained of–namely, the conveying of the Dee residence to Mrs. Dee's parents–occurred on January 31, 1979, which was a time within one year before the filing of Mrs. Dee's petition in bankruptcy on December 28, 1979. Mrs. Dee testified that she voluntarily signed the deed, thereby transferring ownership of the property. Nevertheless, the plaintiff's case must fail since Pittsburgh National Bank did not meet its burden of proving that Mrs. Dee transferred her residence with the intent to defraud her creditors. 11 U.S.C. § 727(a)(2).

## B. Intent to Defraud Under Section 727(a)(2)

■ Section 727 requires that the court find actual fraudulent intent by the Debtor in order to deny a discharge. *Halpern v. Schwartz,* 426 F.2d 102, 104 (2d Cir. 1970). Actual intent to defraud, as distinguished from constructive intent, requires that the debtor himself possess a culpable purpose. *Bank of Pennsylvania v. Adlman, supra,* 541 F.2d at 1006 n.11. "As the Third Circuit has said: '[i]t is not so much the acts of the bankrupt that will prevent his discharge as it is the intent with which he acts'". *Id.,* citing *In re Pioch, supra,* 235 F.2d at 906.

■ The debtor delegated management of the household financial affairs to her husband because she is unknowledgeable and uninformed regarding financial matters. Mrs. Dee signed the deed because her husband requested her to sign a paper. She did not know that she was signing a deed or that she was effecting the legal transfer of her home. Her husband purposefully failed to explain to the Debtor that she was conveying their home. Moreover, Mrs. Dee was not aware of the fact that she was personally indebted to Pittsburgh National Bank or of any default by Pedemerx, Inc. as of the date of the transfer, January 31, 1979. She, therefore, did not act with actual intent to defraud her creditors.

The plaintiff contends that the Court must find that Mrs. Dee acted with actual intent to defraud creditors since the Debtor's conveyance was without fair consideration. The plaintiff argues that state law controls the burden of going forward with evidence of intent to defraud, and that pursuant to Pennsylvania law, a transfer for less than fair consideration raises a presumption of fraudulent intent, citing the Uniform Fraudulent Conveyance Act as enacted in 39 P.S. §§ 351–363 (1954). In the alternative, the plaintiff argues that federal law controls the issue of presumption, and that federal case law reviewing this

issue has held that a gratuitous transfer of valuable property raises a presumption of actual intent to defraud. *E. g., In re Derrick*, 228 F.Supp. 964 (E.D.Ark.1964). The plaintiff maintains that the Debtor has failed to come forward with evidence rebutting the presumption of intent to defraud.

The Court is unpersuaded by the plaintiff's contentions. A presumption of actual intent under section 727 is a matter of federal law and not governed by state law. *Rutter v. General Motors Acceptance Corp.*, 70 F.2d 479 (10th Cir. 1934). As outlined above, Rule 407 does not govern the burden of going forward with the evidence, but allocates to the plaintiff the initial burden of producing evidence and the ultimate burden of proof. Case law, however, is split over the rule governing the shift of the burden of going forward with evidence of intent to defraud. One line of cases holds that a gratuitous transfer of valuable property is only circumstantial evidence of intent to defraud. *See, e. g., In re Adlman*, *supra*, 541 F.2d at 1004–06; *In re Cadarette*, CCH Bankr.L.Rep. ¶ 66,795 (D.Conn. 1978). On the other hand, some courts find that a transfer without fair consideration raises a presumption of intent to defraud. *See, e. g., In re Gibson*, CCH Bankr.L.Rep. ¶ 66,009 (E.D.Tenn.1976); *In re Candler*, CCH Bankr.L.Rep. ¶ 66,001 (N.D.Ga.1976). Since Mrs. Dee has come forward with convincing evidence of her absence of intent to defraud, the Court need not decide whether a gratuitous transfer is a presumption of intent to defraud that shifts the burden of going forward with the evidence to the Debtor.

In *Davis v. Jacobs*, 35 F.2d 936 (1st Cir. 1929), the First Circuit concluded that the Debtor–wife, who transferred money to her husband, but who had no knowledge or intent that the funds would be diverted from creditors, did not possess actual intent to defraud. The court in *Davis* reasoned:

> The mere placing of funds by a wife in the hands of her husband, in whom she has confidence, for disbursement for their mutual benefit, involves no obligation as to supervision and control over the use of such funds in order to avoid liability in case of fraudulent use, of which use she has no knowledge, and in which she did not participate.

*Id.*, at 937. In the instant case, Mrs. Dee's delegation of the household's financial matters to her husband, which was done in such a manner that the Debtor signs financial papers simply at her husband's request, does not rise to the level of actual intent to defraud, as contemplated by section 727. *See, e. g., Bank of Pennsylvania v. Adlman*, *supra*, 541 F.2d at 1006; *In re Meyers*, 105 F. 353 (S.D.N.Y.1900); *In re Hyman*, 97 F. 195 (S.D.N.Y.1899).

■ Contrary to the plaintiff's assertions, Mrs. Dee's delegation of financial matters to her husband was not done with "reckless indifference." Mrs. Dee testified that she had practically no understanding of financial matters, and that she felt that it was wise to let her husband handle those problems. Furthermore, "reckless indifference" is not a sufficient basis upon which to deny a discharge under Section 727(a)(2). The cases cited by the plaintiff involve section 14(c)(3) of the Bankruptcy Act, 11 U.S.C. § 32(c)(3), a provision dealing with the denial of discharge in cases where a debtor in business makes a false financial statement in order to obtain credit. *See, e. g., In re Perlman*, 407 F.2d 861 (3d Cir. 1961). No court, however, has applied this standard to section 14(c)(4) of the Bankruptcy Act, the section from which section 727(a)(2) of the Code is derived, and this Court would decline to do so under section 727(a)(2). Section 14(c)(3) of the Bankruptcy Act, as distinguished from section 14(c)(4), was a provision of narrow scope since its application was limited to false statements made in order to obtain money or goods on credit. In contrast, section 727(a)(2) has broad application and seeks to prevent any diminution of the estate by the concealing or otherwise disposition of assets. Section 727(a)(2) must therefore require a finding of actual intent.

Based on the foregoing, the plaintiff's complaint for the denial of the Debtor's discharge is denied.