In re: Velma GAGNON, Debtor.

Nancy PRENTISS, Administrator of the Estate of Onezime Gagnon, Plaintiff,

v.

Velma GAGNON, Defendant.

Bankruptcy No. 182–00007.
Adv. No. 182–0053.

United States Bankruptcy Court,
D. Maine.

Aug. 6, 1984.

William J. Smith, John M. Pluto, Van Buren, Me., for plaintiff.

L. James Lavertu, Madawaska, Me., for defendant.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

On March 18, 1982, the plaintiff filed a complaint objecting to the debtor's discharge.[1] The plaintiff contends that the debtor (1) failed to satisfactorily explain the loss of approximately $18,300; and (2) transferred proceeds from the sale of jointly-owned real property with the intent to hinder, delay, or defraud a creditor.[2]

### I. Loss of Assets

The debtor filed her bankruptcy petition in January, 1982. Before then she was unemployed, received no income, and lived with her elderly father, sister and brother Adrian. In 1975, her brother Onezime opened a joint bank account payable to himself or the debtor. All deposits to the account were made with funds belonging to Onezime. It was the debtor's understanding that this money was intended to be hers upon Onezime's death.

Onezime died in August, 1978. Shortly thereafter, the debtor withdrew the balance of $12,360.33 from the account. The debtor also received an additional $5943.62 worth of stock from her brother's estate, for a total of $18,303.95.

To account for this money, the debtor produced receipts and other documents evidencing (1) payments totalling $2,373.28 for Onezime's funeral and burial expenses; (2) payments for various taxes totalling $2,013.43; and (3) payments for attorneys fees in connection with Onezime's estate

totalling $297.18. The debtor also testified that she paid $5600 to purchase an automobile in 1979, paid $1250 in attorney's fees to her present counsel, and turned over $1800 to the bankruptcy trustee. Finally, she testified that at least from May, 1980 until she filed her petition, she sometimes used that money to pay for food, utilities, clothing, and other household expenses.[3]

Title 11 U.S.C. § 727(a)(5) provides that the Court shall grant the debtor a discharge unless

the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities....

The plaintiff has the ultimate burden of proving her objection to discharge. Bankruptcy Rule 4005; Bankruptcy Rule 407 (superseded August 1, 1983).

Although the debtor's explanation of the loss of her assets " 'must consist' of more that ... [a] vague, indefinite, and uncorroborated hodgepodge of financial transactions,' " *First Federated Life Insurance Co. v. Martin (In re Martin),* 698 F.2d 883, 886 (7th Cir.1983) (quoting *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir.1966)), it need not explain in detail every dollar spent on living expenses. *See In re Hale,* 274 F.Supp. 813, 816 (W.D.Va. 1967) (construing section 14c(7) of the old Bankruptcy Act of 1898).[4] Here, the debtor accounted with specificity for almost $15,000 of the approximately $18,300 in question. It appears that the remaining $3000–$3500 was spent on living expenses over at least an 18-month period for the debtor, her elderly father, sister and brother.[5] The Court is not persuaded that the

---

1. The complaint does not seek a determination of the dischargeability of a specific debt. Thus, the Court does not consider any issues under 11 U.S.C. § 523.

2. The complaint alleges as a third ground for denying the debtor's discharge that the debtor knowingly made a false oath or account. The plaintiff failed to pursue this allegation either in her pre-trial memorandum or at trial. Therefore, the Court treats that issue as waived.

3. A partial list of goods purchased was introduced into evidence. It itemizes expenditures of approximately $1500 not including food, utilities or gasoline.

4. Section 727(a)(5) is substantially the same as section 14c(7) of the old Bankruptcy Act. *First Federated Life Ins. Co. v. Martin (In re Martin),* 698 F.2d 883, 886 (7th Cir.1983).

5. It appears that all four were unemployed.

debtor has failed to explain satisfactorily what happened to the $18,300 in question.

## II. Transfer of Real Estate Proceeds

Prior to 1979, the debtor's brother, Adrian, owned the real property in question. In order to ensure that it would pass to the debtor upon his death, Adrian conveyed it to himself and the debtor as joint tenants in May, 1979. The debtor gave no consideration for this transfer, and never considered the property as belonging to her. In May, 1981, the property was sold to third parties for $5,000. Adrian received all proceeds from the sale.

Title 11 U.S.C. § 727(a)(2)(A) provides that the Court shall grant the debtor a discharge unless

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed ... property of the debtor within one year before the date of the filing of the petition....

██ This section requires proof of *actual* intent to hinder, delay or defraud. *In re Gugliada*, 20 B.R. 524, 529–30, 9 B.C.D. 339, 342 (Bankr.S.D.N.Y.1982). "Actual intent to defraud, as distinguished from constructive intent, requires that the debtor himself possess a culpable purpose." *Pittsburgh National Bank v. Dee (In re Dee),* 6 B.R. 784, 787, 6 B.C.D. 1169, 1171 (Bankr.W.D.Pa.1980). Here, the Court finds that the debtor never considered herself an owner of the real estate; she and her brother looked upon their joint tenancy as a testamentary substitute. Thus, the Court is not persuaded that the debtor had the actual intent to hinder, delay or defraud creditors when she allowed her brother to retain all of the proceeds from the sale of their jointly held real estate.

Based on the foregoing, the plaintiff's complaint objecting to the debtor's discharge shall be denied. Enter Order.