In the Matter of Raymond TOPPER,
Bankrupt.
Raymond Topper, Appellant.
No. 11592.

United States Court of Appeals
Third Circuit.
Argued Nov. 1, 1955.
Decided Jan. 16, 1956.

Nathan L. Reibman, Easton, Pa., for appellant.

No appearance for appellee.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from the affirmance by the District Court of the Order of the Referee in Bankruptcy denying a bankrupt his discharge in bankruptcy.

The undisputed facts may be summarized as follows:

Prior to January 15, 1951 Raymond Topper, the bankrupt, conducted a small Army and Navy Store in Easton, Pennsylvania. On the date mentioned he retired, voluntarily, paying all debts in full, with the exception of $3,000.00 owed to his mother, $350.00 owed to two small loan companies, $146.35 owed to four retail accounts and rent for his store beyond February, 1951. His landlords subsequently entered judgment by confession for accelerated rent in the sum of $1,417.50 under the terms of the bankrupt's lease; the amount was later reduced by payments of $287.50 to $1,130.-00.

On February 25, 1953, Topper filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. In Schedule A of the prescribed official forms, he listed only one creditor, his landlords, for $1417.50 and in his oath to the

692

Schedule stated "that the said Schedule is a statement of all my debts * * * according to the best of my knowledge, information and belief." Subsequently the landlords filed their claim for $1,130.00, the balance due them on their judgment.

The bankrupt had no assets when he filed his petition, nor did he have any when his discharge was denied.

At a meeting of creditors and later, at the hearing on objections to his discharge, the bankrupt freely testified that at the time of preparing and filing his petition and schedules he had outstanding the debts previously stated; that he had not listed these debts because he intended to pay them; that he listed only his landlords as creditors because he desired to utilize the bankruptcy proceedings to discharge his obligation to them; that at the time of preparing his schedules he had disclosed to his attorney his indebtedness to others than his landlords and his intention to pay them and that his attorney had advised him to list only his indebtedness to his landlords; that acting on such advice he signed the schedules and took the required oath.

The Referee held that the bankrupt was not entitled to his discharge because he had committed an offense under Title 18 U.S.C.A. § 152[1] which provides among other things, "Whoever knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding * * *. Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

In making this ruling the Referee conceded that "the * * * facts present a novel situation"; "The bankrupt had little to gain from the omission" (to list all his creditors); "fraudulent intent * * * is not easily inferred from the omission itself"; the bankrupt had acted in reliance upon the advice of counsel after a full disclosure to him of all the facts and that "In some cases this has been held a good defense" (citing as to the latter Levinson v. United States, 3 Cir., 1920, 263 F. 257).

The District Court affirmed the decision of the Referee "with some reluctance and on the theory, supported by weighty authority (In re Schnabel, [D.C.], 61 F.Supp. 386; In re Steinberg [2 Cir.], 143 F.2d 942), that the word 'fraudulent' in Title 18 U.S.C.A. § 152 has a *special* statutory meaning somewhat different from the meaning given it in ordinary usage, and that it means no more than an 'intentional untruth in a matter material to the issue which is itself material' and this does not mean 'with intent to defraud creditors'".

In its opinion the District Court further stated that "I think it is fair to say that there is no evidence that either this bankrupt or his attorney had any intention whatever of defrauding anybody of a cent of money. When the bankrupt filed his petition, his intention was to pay all his creditors, except one, if and when he became able to do so. He had no assets and was not able to pay anyone at the time of his bankruptcy. Withholding the names of creditors from his schedules was not necessary to his purpose."

We are of the opinion that the District Court erred in affirming the Referee's Order under its view that there was "no evidence that the bankrupt had any intention whatever of defrauding anybody."

■ As we noted In the Matter of Wolf, 3 Cir., 1948, 165 F.2d 707, 710: "To bar the bankrupt's discharge there must be an actual fraudulent intent". We spelled out "actual fraudulent intent" to be "an actual intent on the part of the bankrupt to hinder, delay and defraud his creditors."

It is true that in In re Steinberg [143 F.2d 943] the Court of Appeals for the

---

1. Section 14, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, provides, inter alia, "The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under Section 152 of Title 18 * * *."

Second Circuit in 1944 "bow(ed) to the precedents which, in practical effect, have read the word 'fraudulently' out of the statute by the use of the phrase, 'an intentional untruth in a matter material to the issue which is itself material'", but some two years later, the same Court, in Tancer v. Wales, 156 F.2d 627, 628, read the word "fraudulently" back into the statute.[2]

With respect to the Schnabel case, which cited Steinberg, it may be noted that it was decided a year before the Second Circuit decided Tancer.

█ A final comment. The bankruptcy schedules are prepared by counsel and indeed the Bankruptcy Act provides for the payment of a fee for counsel for the preparation of schedules. It is entirely understandable that a bankrupt may be guided by the opinion of his counsel as to what comes within the meaning of the provisions of the Bankruptcy Act— specifically what shall be included in the Schedules. We have held that the advice of counsel may be an excuse for an inaccurate or false oath: Levinson v. United States, supra, and other Circuits have also done so: Dilworth v. Boothe, 5 Cir., 1934, 69 F.2d 621; Thompson v. Eck, 2 Cir., 1945, 149 F.2d 631. In the latter case the Court stated, at page 633: "There was proof that the bankrupt made out his schedules on his attorney's advice. This is ordinarily enough to show that the necessary (fraudulent) intent is lacking." See also 1 Collier, Bankruptcy, Sec. 14.23 (14th ed. 1940).

█ As observed in Dilworth v. Boothe, supra, 69 F.2d at page 624: "The (Bankruptcy) act is to be reason-

ably construed **\* \* \***. The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural."

█ For the reasons stated the Order of the District Court affirming the Order of the Referee will be reversed and the cause remanded with instructions to proceed in accordance with this Opinion.

**2.** Said the Court in the Tancer case: "There have been some opinions of this and other courts that have treated the words 'knowingly and fraudulently' as synonymous with 'an intentional untruth in a matter material to the issue which is itself material' (citing cases). This formula has been spoken of in one of our own opinions as reading ' "fraudulently" out of the statute by use of the phrase "an intentional untruth in a matter ma-

terial to the issue which is itself material" '. In re Steinberg, 2 Cir., 1943, 143 F.2d 942, 943. The criticism, however, would seem to be one of verbiage rather than reality, for the utterance of 'an intentional untruth in a matter material to the issue which is itself material' is no more than a characterization of what is sufficient to justify an inference of an intent to defraud the bankrupt's creditors."