**In re Robert Clifford MURRAY and Patricia Spence Murray, Debtors.**

**John A. VAUGHAN and Mary L. Vaughan, f/t/a Beach Pedaler, Plaintiffs,**

**v.**

**Robert Clifford MURRAY and Patricia Spence Murray, Defendants.**

Bankruptcy No. 89–04029–N–B.

Adv. No. 90–2005–N–B.

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

July 16, 1990.

**474**

Albert C. Selkin, White and Selkin, Norfolk, Va., for plaintiffs.

James R. Sheeran, Marcus, Santoro & Kozak, Portsmouth, Va., for debtors/defendants.

Debera F. Conlon, Asst. U.S. Trustee, Norfolk, Va.

## OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

This matter comes before the Court on the complaint of John and Mary Vaughan, f/t/a Beach Pedaler, (Vaughans) to determine, under 11 U.S.C. § 523(a)(6), the dischargeability of the debt of Robert and Patricia Murray, (debtors). The issues are straightforward:

1.) Was there a conversion of the Vaughans' property by the debtors and, if so, was the conversion willful and malicious?

2.) May the debtors excuse their actions by pleading advice of counsel? After hearing arguments, the Court took the matter under advisement and permitted counsel to brief the issues.

## FINDINGS OF FACT

The Court makes the following factual determinations from the trial testimony, exhibits and stipulations. In August of 1984 the debtors, incorporated as Beach Pedaler Bicycle Sales, Inc. (corporation), purchased the Beach Pedaler Bicycle Shops, consisting of four locations, from the Vaughans. The debtors were the sole shareholders of the new corporation. As officers of the corporation and as individuals, the debtors executed a note in amount of three-hundred and fifty thousand dollars ($350,000.00) as consideration for the purchase of the bicycle shops. To secure the payment of the note the corporation executed a security agreement granting the Vaughans a security interest in the present and after-acquired inventory, fixtures and leases of the corporation. The security agreement was duly perfected by the Vaughans.

The corporation was the first business venture for the debtors and they were, admittedly, novices when it came to sizeable financial transactions, security agreements, security interests in inventories and shifting merchandise. The debtors failed to follow the advice of their attorney at the time of the purchase of the business and consequently found themselves as personal guarantors of the note to the Vaughans.

The corporation purchased brand name inventory from a number of suppliers on open accounts. Business was steady until 1987 when Mr. Murray became extremely ill and was forced to be away from the business for long periods of time. Mrs. Murray continued to operate the business but lacked Mr. Murray's expertise in selling bicycles. Additionally, the bicycle market was changing rapidly and the debtors found themselves unable to compete with mass marketing and discount merchandisers.

By the Spring of 1989, the business was in serious financial trouble. The previous Christmas season was dismal and suppliers were reluctant to ship new inventory without some satisfaction of their outstanding accounts which exceeded $150,000.00. Too, the overhead expense of operating four stores was straining the cash flow. Projections for the coming 12 months were not encouraging. Upon the referral of their corporate counsel the debtors sought advice from a law firm which advises financially distressed businesses. The debtors committed to following the advice of their new counsel *to the letter*, realizing that many of their problems were the result of their inexperience and lack of following their corporate counsel's advice.

On July 3, 1989, the debtors met with new counsel. After a full disclosure of the debtors' financial situation and examination of notes and security agreements, counsel determined that the debtors would be unable to continue operating the business under its current debt structure. The debtors were advised to approach the Vaughans about taking the business back. At a meeting on July 14, 1989, the debtors told the Vaughans of their financial hardships. The Vaughans were unwilling to consider reassuming the business without more detailed information regarding the inventory status and obligations of the four shops.

Failing any potential reassumption by the Vaughans, the debtors were advised by counsel to contact the suppliers, lock the doors and to put everyone on notice that they were no longer in business. Assuming that the inventory from the suppliers was security financed, counsel advised the debtors to return brand name merchandise to the suppliers in settlement of accounts. When the debtors questioned this advice they were told by counsel that the purchase money security interests of the suppliers had priority over the security interest of the Vaughans. Admittedly, counsel failed to check for properly filed U.C.C. financing statements securing the suppliers' interests. In reality records reveal that Raleigh Bicycle, a/k/a Derby Bicycle Corporation, was the only supplier selling to the fledgling corporation which perfected a security interest in the inventory. The amount of the unsecured debt to suppliers which was offset by the return of inventory was forty-eight thousand, five hundred, seventy-three dollars and fifty-eight cents ($48,573.58).

In addition to the inventory accounts, the debtors paid an unsecured corporate note to Crestar Bank for fifteen thousand, five-hundred, sixty-eight dollars and eight cents ($15,568.08), even though counsel advised that creditors which went unpaid might challenge the payment of the note as a preference should the business declare bankruptcy. The debtors risked the challenge in spite of counsel's advice. The business locations were closed and the keys surrendered to the landlords. The debtors abandoned the remaining assets of the corporation and walked away from the business on or about August 1, 1989. In November, 1989, they filed, as individuals, for Chapter 7 protection under the Bankruptcy Code. The corporation did not file for bankruptcy.

## ANALYSIS OF LAW

11 U.S.C. § 523(a)(6) excepts from discharge any debt for "willful" and "malicious" injury by the debtor to another person or to the property of another person, to wit: a conversion. All exceptions to discharge are to be strictly construed. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967), *citing Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915).

Under § 17(a)(2) of the Bankruptcy Act, debts "for willful and malicious conversion of the property of another" were excepted from discharge. Although § 523(a)(6) of the Bankruptcy Code does not specifically except debts for the conversion of property, it is clear that a willful and malicious injury to the property of another under § 523(a)(6) includes a willful and malicious conversion. 124 Cong.Rec.H. 11,095–6 (daily ed. Sept 28, 1978); S. 17,412–13 (daily ed. Oct. 6, 1978). However, the standard for determining whether the debt is dischargeable under the Code has been changed.

Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902 [1904]) held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 365, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6320–21.

■ Courts are divided as to the effect of the reference by Congress to *Tinker*. Some courts have held that Congress meant to overrule *Tinker's* holding concerning malice, as well as willfulness, and, consequently, have ruled that specific malice is now required under § 523(a)(6). *In re Hodges*, 4 B.R. 513 (Bankr.W.D.Va. 1980). However, a District Court in the Western District of Virginia has held that the standard established under the Bankruptcy Act by the 4th Circuit in *Bennett v. W.T. Grant* was still good law. *In re Fussell*, 15 B.R. 1016 (W.D.Va.1981). In *Bennett* the 4th Circuit held that specific malice is not required on the part of the debtor. "[I]f the act of conversion is done deliberately and intentionally in knowing disregard of the rights of another, it falls within the statutory exclusion [from discharge in bankruptcy]." *Bennett v. W.T. Grant*, 481 F.2d 664, 665 (4th Cir.1973). Although the enactment of § 523(a)(6) in the Bankruptcy Code overruled *Tinker* in

part, the interpretation under *Tinker* that "constructive or implied malice was sufficient to establish malice under the exception" was not overruled. *United Bank of Southgate v. Nelson*, 35 B.R. 766, 769 (N.D.Ill.1983). The reasoning of *In re Fussell* and *United Bank of Southgate* convinced the 4th Circuit that the implied malice standard of *Tinker*, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, satisfies the malice standard under 11 U.S.C. § 523(a)(6). *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir.1985). This Court is bound, therefore, to follow the implied malice standard of *Tinker* in interpreting § 523(a)(6).

■ It is undisputed that the debtors converted the property of the Vaughans. The Vaughans clearly had a priority security interest in the $48,573.58 of inventory which was surrendered to suppliers in exchange for credit on the suppliers' accounts. The Court finds that the actions of the debtors were deliberate and intentional when they surrendered the inventory to the suppliers. These acts were in knowing disregard of the rights of another. However, the debtors claim that the corporation alone is liable for the debt to the Vaughans. Upon examination of the evidence, the Court finds that the corporate veil is not a defense in this case. The note and the agreement of purchase and sale are individually signed and although the security agreement speaks of a corporate entity the Court concludes that this corporation was, in reality, the individuals.

If our deliberations were to end here, the outcome would be predictable. However, in further defense of their actions the debtors have pleaded that they were following the advice of counsel and that they, consequently, should be excused from any finding of willfulness or deliberate intent in their actions.

■ Reliance upon the advice of counsel may constitute a defense in a case because it negates the inference of fraudulent intent. *In re Topper*, 229 F.2d 691

(3rd Cir.1956). In a case where the debtor concealed the receipt of insurance policy proceeds from his trustee in bankruptcy, the 3rd Circuit found that the debtor did not knowingly "conceal" the proceeds but omitted the scheduling of them on the advice of counsel and, therefore, was entitled to discharge. *Klein v. Powell, et al.*, 174 F. 640 (CCA 3rd 1909). Where a defendant has fully and in good faith disclosed the facts to counsel, where counsel advises him as a matter of law, and where the defendant acts on this advice believing that he has been properly advised, he is not guilty. *Levinson v. United States*, 263 F. 257 (CCA 3rd 1920); *Remmers v. Merchants'-Laclede Nat. Bank of St. Louis*, 173 F. 484 (CCA 8th 1909). Before the advice of counsel may be pleaded in justification or excuse of charges made, the debtor must have acted on the advice as a matter of law. "Whether the bankrupt here stands in such plight depends on the facts of the case judged in the light of all the surrounding circumstances." *In re Breitling*, 133 F. 146 (CCA 7th 1904).

■ It is clear that counsel advised the debtors to surrender the inventory in settlement of their trade accounts. Counsel now admits that the advice was in error since she did not verify that the suppliers' security interests in inventory were not perfected. The debtors, under continuing financial strain, put their trust in counsel and in good faith followed counsel's advice. The irregularities in conduct cited by the plaintiff are harmless and inconsequential. It is well-settled that exceptions to discharge are to be liberally construed in favor of the debtor, *Roberts v. Ford*, 169 F.2d 151 (4th Cir.1948), and strictly construed against the creditor, *Royal Indemnity v. Cooper*, 26 F.2d 585 (4th Cir.1928). Therefore, the Court concludes that, having acted as they did, the debtors conduct would not be "willful" as construed in 11 U.S.C. § 523(a)(6). "There may be an honest, but mistaken belief ... that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort [conversion], but not a willful and malicious one." *Shaver Motors, Inc. v. Robin Richard Mills*, 111 B.R. 186, 197

(Bankr.N.D.Ind.1988). The debt owed to John and Mary Vaughan by Robert and Patricia Murray is determined to be dischargeable in its entirety.

IT IS SO ORDERED.