In re HAISFIELD ENTERPRISES OF FLORIDA, Richard Haisfield, Haisfield Children Irrevocable Trust, Marc Haisfield, and Randy Haisfield, Debtors.

PEABEY ASSOCIATES, ACP Florida Holdings, Inc. and Plaza Del Oro Building, Inc., Plaintiffs,

v.

Richard HAISFIELD, Randy Haisfield, Marc J. Haisfield, the Haisfield Children's Irrevocable Trust and Haisfield Enterprises of Florida, a Florida general partnership, Defendants.

Bankruptcy Nos. 91–32449–BKC–RAM to 91–32453–BKC–RAM.
Adv. No. 91–1200–BKC–RAM–A.

United States Bankruptcy Court,
S.D. Florida.

May 24, 1993.

Robert C. Furr, Furr & Cohen, P.A., Boca Raton, FL, for Marc Haisfield and Randy Haisfield.

Jay D. Schwartz and Alberto A. Macia, Shea & Gould, Miami, FL, for Peabey.

Paul Orshan, Kluger, Peretz, Kaplan & Berlin, P.A., Miami, FL, for Richard Haisfield.

## MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

The plaintiffs', Peabey Associates, ACP Florida Holdings, Inc., and Plaza Del Oro Buildings, Inc., ("Peabey") seek a determination that a state court judgment debt owed by the defendants', Richard Haisfield, Randy Haisfield, and Marc Haisfield ("Haisfield" or "Debtors") is nondischargeable under § 523(a)(6) of the Bankruptcy Code.[1] The plaintiffs file a motion for summary judgment on February 20, 1992. The defendants filed a cross motion for summary judgment on April 16, 1993.

Plaintiffs allege that the final judgment obtained in state court against the Debtors is nondischargeable under § 523(a)(6) because the judgment was predicated upon a willful and malicious injury by the Debtors against the plaintiffs' property. As such, they argue that the defendants are collaterally estopped from retrying the issues here.

The defendants' motion alleges that the Haisfields' good faith reliance on counsel's advice to file a lawsuit and lis pendens in the state court is an absolute defense to a § 523(a)(6) claim.

The Court has reviewed the pleadings and memoranda filed by the parties, considered the arguments of counsel presented at hearings conducted on March 31, 1992 and May 18, 1993, and reviewed applicable portions of the state court record including the trial transcript, the August 1, 1991 Final Judgment of the trial court and the May 5, 1993 opinion by the Florida Fourth District Court of Appeal. The Court finds that defendants' cross motion for summary judgment must be denied. Reliance on counsel is not a viable defense to the claim in this proceeding. Plaintiffs' motion will be granted as to Richard Haisfield. The state court record conclusively establishes that the judgment debt is for wilful and malicious injury by Richard Haisfield to plaintiffs' property. Plaintiffs' motion will be denied as to defendants Randy and Marc Haisfield. The willful misconduct of Richard Haisfield will not be imputed to his sons solely because they were his partners.

## FACTUAL BACKGROUND AND STATE COURT PROCEEDINGS

The facts established from the state court record are as follows:

On July 18, 1988, Haisfield Enterprises of Florida, a Florida general partnership, acting through its individual partners (the "Haisfields") entered into a contract to purchase real property from Peabey for $16,000,000.00. Under the terms of the contract, the Haisfields were required to pay an initial $150,000.00 deposit and had 30 days to inspect the property. If the property passed Haisfields' inspection, and they chose to proceed, an additional $150,000.00 deposit was required within 5 days following the expiration of the inspection period. Alternatively, the Haisfields could have terminated the contract and received a full refund of their $150,000.00 deposit. Dur-

---

1. The Court previously dismissed the claim against the defendants', Haisfield Children Irrevocable Trust and Haisfield Enterprises of Flori- da since these defendants are not individuals subject to a § 523 claim.

ing the 30 day inspection period, the Haisfields found problems with certain leases on the property. A major tenant was leaving the property. Believing this would affect the value of the property, the Haisfields sought a $300,000.00 reduction of the purchase price. Peabey refused to lower the purchase price and advised the Haisfields that they could either purchase the property for the agreed $16,000,000.00 or terminate the contract and receive a full refund of the deposit.

Following the expiration of the inspection period the Haisfields funded the remainder of the $300,000.00 deposit and proceeded to prepare for closing on August 31, 1988. At the closing, the Haisfields again requested a reduction of the contract price and Peabey refused. The Haisfields refused to close and threatened to file a lawsuit unless Peabey reduced the price. Peabey again offered to return Haisfields' deposit, but refused to lower the price. The sale did not close as scheduled.

On September 13, 1988, the Haisfields sent a letter to Peabey alleging misrepresentations in the contract concerning certain leases. Haisfield again demanded a reduction in the contract price from $16,-000,000.00 to $13,564,267.00 and threatened to file a lawsuit for fraud, specific performance and an abatement of the purchase price if Peabey refused. The parties continued to negotiate toward a second closing date scheduled for September 22, 1988. Peabey appeared at the closing ready to close at the original $16,000,000.00 contract price, but the Haisfields did not. The Haisfields again demanded a reduction in the purchase price and threatened to initiate litigation. The sale never closed.

True to their threats, on September 26, 1988, the Haisfields filed a complaint in state court seeking specific performance of the contract, damages for fraud and an abatement in the purchase price.[2] The basis of the complaint was the alleged misrepresentations concerning leases on the property. Richard Haisfield, as the managing partner of Haisfield Enterprises of Florida, filed and recorded a notice of lis pendens against the subject real property. Haisfield as principal and State Farm as surety, filed a lis pendens bond in the amount of $2,500,000.00. The defendants' moved to have the lis pendens dissolved, and on May 30, 1989, the state court entered a Final Judgment on the Pleadings against the Haisfields on all counts of their complaint. The judgment also dissolved the notice of lis pendens. The Haisfields appealed the decision to the Fourth District Court of Appeals, which affirmed. Unfortunately for Peabey, the notice of lis pendens remained in effect from its filing and recording on September 29, 1988 until the termination of the Appeal on November 30, 1990, impeding their efforts to sell the property.

After the appellate court affirmed the judgment, the state trial court conducted a non-jury trial to determine Peabey's claim against the Haisfields and State Farm for damages caused by the wrongful notice of lis pendens. After a full trial the state court entered judgment finding that the lis pendens had been wrongfully filed and recorded by Haisfield causing damages to Peabey of $5,552,205.25 plus $445,393.34 in interest. The Court also found that as a result of Richard Haisfield's "bad faith" filing of the wrongful lis pendens, Richard Haisfield could not limit his liability to the amount of the lis pendens bond of $2,500,-000.00, but would instead be liable for the full amount of the $5,997,598.59 judgment. The judgment was entered jointly and severally against each of the defendants.

The Haisfields also appealed this ruling to the Fourth District Court of Appeals. In a decision issued on May 5, 1993, the Fourth DCA found that the lower court miscalculated the damages. The appellate court held that the correct method for assessing damages for the wrongful filing of a lis pendens is the difference between the fair market value of the property at the time of the filing of the lis pendens and its

---

2. *Richard Haisfield, et al. v. Peabey Associates, et al.,* Case No. CL–88–9023–AE, 15th Judicial Circuit, in and for Palm Beach County, Florida.

fair market value at the time of its termination, citing *Askari v. R & R Land Co.,* 179 Cal.App.3d 1101, 225 Cal.Rptr. 285 (1986). The Fourth DCA reversed and remanded the case for a proper determination of damages, but affirmed the award of attorney fees previously imposed. As announced on the record at the May 18th hearing, this Court interprets the appellate decision as reversing the damages award but not reversing any findings relevant to the character of the liability.

On August 21 and 22, 1991 the defendant and certain affiliates filed voluntary Chapter 11 petitions in this Court. Peabey timely filed this complaint objecting to the dischargeability of the state court judgment on December 12, 1991. On February 20, 1992, the plaintiffs filed their motion for summary judgment. The defendants filed a cross motion for summary judgment on April 16, 1993. In between the filing of both summary judgment motions, by order dated April 13, 1993, the Debtors confirmed their third amended plan of reorganization.

### DISCUSSION

■ Collateral estoppel or issue preclusion forecloses a relitigation of an issue of fact or law that has been litigated and decided in a prior suit. *In re Kecskes,* 136 B.R. 578 (Bankr.S.D.Fla.1992). The principles of collateral estoppel may be applied to foreclose a relitigation of facts in a dischargeability proceeding. *In re Latch,* 820 F.2d 1163, 1166 (11th Cir.1987); *In re Halpern,* 810 F.2d 1061 (11th Cir.1987); *In re Held,* 734 F.2d 628 (11th Cir.1984).

■ Florida collateral estoppel law applies in determining whether the judgment obtained by Peabey has a preclusive effect in this proceeding. *In re Keene,* 135 B.R. 162 (Bankr.S.D.Fla.1991); *In re Feldstein,* 93 B.R. 272 (Bankr.M.D.Fla.1988). The three elements required to give the Florida state court judgment preclusive effect are whether the parties are identical, the issues are identical and the matter has been fully litigated in a court of competent jurisdiction. *Trucking Employees of N. Jersey Welfare Fund, Inc. v. Romano,* 450 So.2d 843 (Fla.1984); *Mobil Oil Corp. v. Shevin,* 354 So.2d 372 (Fla.1977); *Universal Construction Co. v. City of Ft. Lauderdale,* 68 So.2d 366 (Fla.1953). Each of these elements is examined below.

### THE PARTIES ARE IDENTICAL IN BOTH CASES AND THE ISSUES WERE "ACTUALLY LITIGATED"

■ The first and third issues require only brief comment. The state court case involved the same parties present in this adversary proceeding. Thus, the identity of parties element is satisfied. As to the "actually litigated" issue, under Florida law, even a default judgment is to be given full preclusive effect if the defendant had an adequate opportunity to litigate. *Cabinet Craft, Inc., v. A.G. Spanos–Enterprises, Inc.,* 348 So.2d 920 (Fla. 2nd DCA 1977). The state court case here was intensely litigated. Both the issues of dissolving the lis pendens and damages in relation to the filing of the lis pendens were appealed to the Fourth District Court of Appeals. There is no question that the applicable issues were actually litigated for purposes of applying collateral estoppel.

### ISSUES IN BOTH CASES ARE IDENTICAL

The final issue to be determined, whether the issues of fact presented in the state court litigation are identical to those issues of fact presented in this bankruptcy court adversary proceeding has two subissues. First, the standard of proof used in the previous court's adjudication must have been at least as stringent as that required in a § 523 action. In 1991, the Supreme Court unanimously held that the standard of proof applicable to determining dischargeability cases pursuant to § 523 is the preponderance of the evidence standard. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Since the preponderance standard is the least stringent standard, the standard used by the Florida state court was at least as stringent as the standard applicable here.

■ What remains in dispute is whether the elements necessary to establish a

"willful and malicious injury by the debtor to another entity or to the property of another entity" under § 523(a)(6) were previously determined by the state court. "The word 'willful' means 'deliberate and intentional'". *In re Scotella*, 18 B.R. 975, 977 (Bankr.N.D.Ill.1982). "'Malicious,' as used in § 523(a)(6), means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will.'" *Scotella*, 18 B.R. at 977; *See also*, 3 LAWRENCE P. KING et al., COLLIER ON BANKRUPTCY, Paragraph 523.16[1], at 523–129 to 523–134 (15th ed. 1991). There is no question that the state court judgment satisfies the "willful" element. Haisfield certainly intended to file the lis pendens against the Peabey property, and as a result of his filing the state court found that Peabey suffered damages.

■ The only significant issue is whether the state court's finding that Haisfield acted in "bad faith" is sufficient to establish malice under § 523(a)(6). The Court concludes that it is. The finding in state court was based on an analogy between the filing of a wrongful lis pendens and the filing of a wrongful injunction. The state court analogized the language in Fla.Stat. § 48.23(3) governing the filing of a lis pendens with the language in *Parker Tampa Two, Inc. v. Somerset Development Corp.*, 544 So.2d 1018, 1021–1022 (Fla.1989) a case involving a wrongful injunction. In *Parker*, the court agreed with a majority of courts which find that damages for the filing of a wrongful injunction should be limited to the amount of the injunction bond with the exception of wrongful injunctions obtained either maliciously or in bad faith. In those cases damages may exceed the bond. The state court here concluded that in cases involving a wrongful filing of lis pendens the court may also award damages in excess of the bond where the court finds the actions to be malicious or in bad faith. As a result, the state court's judgment was drafted in a way to incorporate the terms "wrongful" and "bad faith" which correspond with the language used by the Court in *Parker Tampa Two*, 544 So.2d at 1021. Thus, the court's use of "bad faith" in the judgment was not mere dicta; it was a finding necessary under the court's analysis to award additional relief.

The defendants argue that neither the language in the *Parker* case or the findings by the state court here reach the equivalent of maliciousness as used in § 523(a)(6). The Court disagrees with the defendants' analysis. A complete review of the state court record upholds a finding that Richard Haisfield's conduct was malicious as the term is used in § 523(a)(6). Testimony presented in state court established that Haisfield, through his lawyers, made numerous demands that Peabey lower the purchase price or face a lawsuit. The Haisfields threatened to file suit and tie up the property for a significant amount of time. (State Court Transcript ("TR") at pages 238, 240–242, 279–280). The threats were made on a regular basis up to and including the date of closing. (TR 244–245). Along with the filing of the lawsuit, Haisfield filed the wrongful lis pendens. The state court final judgment found that the bona fide contract between Peabey and IPF, a third party, did not close as a direct and proximate result of the wrongful lis pendens. Peabey suffered considerable damage because of this wrongful lis pendens, including substantial attorney's fees incurred in dissolving the wrongful lis pendens. The state court concluded that since Haisfields actions were specifically in bad faith, Haisfield could not limit his liability to the amount of the lis pendens bond, but is liable for the full amount of the Peabey judgment. In sum, based on the judgment and the transcript this Court finds that the finding of "wrongful" and "bad faith" conduct by the state court equates to a finding of "willful and malicious" under 523(a)(6).

■ This finding only applies to Richard Haisfield, not Randy or Marc Haisfield. The plaintiffs argue that as partners, Randy and Marc Haisfield are responsible for the wrongful actions of Richard Haisfield. The Final Judgment did find all the partners jointly and severally liable for the damages. Thus, plaintiffs argue, a finding that Richard Haisfield acted maliciously must also impute the malicious behavior to the other partners. *In re Cecchini* 780

F.2d 1440 (9th Cir.1986). This Court finds the record inconsistent with imputing such behavior to either Randy or Marc Haisfield. The state court final judgment does use the name Haisfield at the beginning of the judgment as a term of art to collectively refer to each partner including Richard, Randy and Marc Haisfield. Yet, when discussing the issue of "bad faith", the Court specifically uses singular pronouns and states that "Haisfield did not file and record the notice of lis pendens in good faith, rather *he* filed and recorded it in bad faith. Therefore, Haisfield cannot limit *his* liability to the amount of the lis pendens bond, and is liable for the full amount of Peabey's damages ..." (Final Judgment, August 1, 1991 paragraph 12). Based upon this language and the facts developed in the state court record, this Court concludes that the state court was referring solely to Richard Haisfield in the only findings sufficient to establish willful and malicious conduct. Although the court's judgment does find Richard, Randy and Marc Haisfield jointly and severally liable, this Court will not find the debt to be nondischargeable under 523(a)(6) in the absence of direct proof of malicious conduct. That proof does not exist here. *See In re Anderson,* 29 B.R. 184 (Bankr.N.D.Iowa 1983); *In re Curry,* 12 B.R. 421 (Bankr.M.D.Fla.1981).

## ADVICE OF COUNSEL IS NO DEFENSE IN THIS PROCEEDING

In their opposition to plaintiffs' motion and in their cross motion, the defendants argue that they relied on the advice of counsel in filing both the lawsuit and notice of lis pendens and that this reliance is a defense to a nondischargeability action under 523(a)(6). The defendants rely primarily on two cases for this proposition, *In re Topper,* 229 F.2d 691 (3rd Cir.1956) and *In re Murray,* 116 B.R. 473 (Bankr.E.D.Va. 1990). Both cases are distinguishable and provide no support for use of this defense in this proceeding.

In *Topper,* a Bankruptcy Act case, a bankruptcy referee denied the discharge of a debtor for his failure to list certain creditors on his schedules. The bankruptcy court found that although not listing these creditors would make no difference to the debtor in the bankruptcy, the debtor's actions constituted a false oath, and established an intent to delay or defraud his creditors. The Third Circuit Court of Appeals reversed finding that there was no evidence that the debtor had intended to defraud anyone. Without a finding of an actual intent to hinder, delay and defraud his creditors, the court could not deny his discharge. The Third Circuit also remarked that the bankruptcy schedules were filled out by the debtor himself on the advice of his counsel, and that the advice of counsel may be an excuse for an inaccurate or false oath. As a result, the court found the debtor was entitled to his discharge.

In *Murray,* a novice businessman and his wife filed a bankruptcy petition after their bicycle store began having financial trouble. Relying completely on the advice of counsel, in good faith, the debtor returned certain inventory to his suppliers in exchange for credit on those suppliers' accounts. The suppliers did not have properly perfected security interests in the inventory and, therefore, the debtor had actually converted property subject to another creditor's lien. The injured creditor filed an action under 523(a)(6) for willful and malicious conversion of property. The court found that the debtors' actions were not done wilfully as defined under 523(a)(6). Debtors' counsel admitted in open court that she had never verified whether the suppliers' security interests were properly perfected. She also argued that the debtors actions, as novice business people, were taken with total reliance on the advice of counsel. As a result, the court found the debtors acted in an honest but mistaken manner, not wilfully and maliciously. 116 B.R. at 477.

The case at bar differs completely from the *Topper* and *Murray* cases. First, Richard Haisfield is certainly not a novice businessman. The decisions to file a lawsuit and notice of lis pendens were business decisions as much as they were legal decisions and Mr. Haisfield must take responsibility for his actions. Second, the *Topper* and *Murray* cases were not collateral es-

toppel opinions. Instead, those courts were making an independent determination of the debtors' good faith reliance on counsel's advice. Here, the state court found specifically that Richard Haisfield's actions were in "bad faith".

In *Topper,* the court made a specific finding that no creditor would be actually harmed by the debtor's actions. Similarly, in *Murray,* the court found that although certain secured creditors would be slightly harmed, it was caused by the inadvertent actions of the debtors. Here, Haisfield's actions were certainly done with a specific intent to tie up the Peabey property. The state court based its decision, at least in part, on the statements made by Haisfield and his representatives that if the purchase price was not significantly reduced the Haisfields would file a lawsuit and tie up the property for a long time. Where there are specific findings of willful, bad faith conduct by the party, reliance on the advice of counsel as a defense to a § 523(a)(6) claim must fail. As a result, Haisfields' cross motion for summary judgment is denied.

### *CONCLUSION*

The state court judgment and record are sufficient to establish that in filing a notice of lis pendens against the Peabey property, Richard Haisfield wilfully and maliciously injured Peabeys' property as those terms are used in § 523(a)(6). Since the state court litigation was actually litigated and the parties are identical, this Court must give full preclusive effect to the state court judgment against Richard Haisfield. Thus, plaintiffs' motion for summary judgment is granted as to Richard Haisfield and the judgment debt owed by Richard Haisfield to Peabey is nondischargeable under 11 U.S.C. § 523(a)(6). Because this Court is unable to conclusively establish the elements of the plaintiffs' claims against either Randy or Marc Haisfield based on the state court record, the plaintiffs' motion for summary judgment is denied as to Randy and Marc. Finally, since the advice of counsel defense is unavailable to protect Mr. Haisfield, his cross motion for summary judgment is denied.

A separate judgment will be entered excepting Richard Haisfield's debt to Peabey from discharge in accordance with Rules 7058 and 9021, Fed.R.Bankr.P.