**In re Mary ARLINGTON, Debtor.**

**Richard HAESKE, Plaintiff,**

**v.**

**Mary ARLINGTON, Defendant.**

**Bankruptcy No. 94 B 21381.**
**Adv. No. 95 A 00141.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 6, 1996.

Janet L. Watson, Watson & Brown, P.C., Wheaton, IL, for Mary Arlington.

Norman H. Lehrer, Lehrer, Flaherty & Canavan, P.C., Wheaton, IL, for Richard Haeske.

M. Scott Michel, U.S. Trustee, Chicago, IL.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the amended complaint of Richard Haeske ("Richard") pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) to determine the dischargeability of a debt owed to him by the debtor, Mary Arlington ("Mary"), his former spouse. For the reasons set forth below, the Court holds that the debt is dischargeable under § 523(a)(2)(A), but is nondischargeable under § 523(a)(6).

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II. FACTS AND BACKGROUND

Many of the facts are undisputed. On May 20, 1987, Richard struck Mary on her face causing injury. Marital discord resulted in the filing of an action in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois to dissolve the marriage. Both parties were represented by counsel. They negotiated a Marital Settlement Agreement (the "Agreement") which was executed on June 7, 1988, and contained, among other things, various terms and provisions concerning payment of their debts, division of their properties, and maintenance for Mary. *See* Debtor's Exhibit No. 1. The Agreement provided that upon Richard's compliance with all terms therein, Mary was to execute a general release of her claim and causes of action against Richard for the May 20, 1987 battery. *Id.* Also contained therein was a provision whereby Richard was to maintain auto insurance coverage on a certain automobile to be conveyed to Mary equivalent to the then existing coverage on the vehicle for a set term. *Id.* The last paragraph of the Agreement provided for its incorporation into any judgment of dissolution of the marriage which might be obtained in the state court case. *Id.* Most pertinently, the Agreement

expressly provided that "in no event shall [the] Agreement be effective or of any validity unless and until a [judgment of dissolution] is entered in the pending action." *Id.* The judgment of dissolution was entered on July 18, 1988. *Id.*

Mary contends Richard failed to provide equivalent automobile coverage on the vehicle with the same carrier at all times. Apparently Richard obtained other coverage on the vehicle with high risk carriers, and Mary was not satisfied. *See* Debtor's Exhibit Nos. 7 and 30. Mary was able to get the coverage with the satisfactory carrier reinstated effective July 9, 1988, for which Richard ultimately paid the cost. *See* Debtor's Exhibit Nos. 2 and 3. Richard contends that he was in full compliance with all terms of the Agreement and was entitled to a full and complete release from Mary for her personal injury claims arising from the battery of May 20, 1987. Mary and her next series of three personal injury attorneys thought otherwise, and filed a personal injury action against Richard in the state court on May 19, 1989— the last day prior to the expiration of the relevant Illinois statute of limitations. *See* Debtor's Exhibit No. 12.

Richard defended the personal injury action and, among other things, pleaded the release provisions of the Agreement as an affirmative defense. *See* Debtor's Exhibit No. 14. He also contended there, as here, that Mary had accepted all the benefits to which she was entitled under the Agreement and therefore had waived her personal injury cause of action against him. *Id.* The state court entered a directed verdict in favor of Richard and against Mary. Subsequently, Richard sought sanctions against Mary under Illinois Supreme Court Rule 137. Sanctions were awarded on April 21, 1994 (the "Sanctions Order"). *See* Complaint, Exhibit B attached thereto. The Sanctions Order found that Mary failed to make a reasonable inquiry into the factual basis of the personal injury action prior to its filing, and taxed her with Richard's attorney's fees in the amount of $18,130.50. The Sanctions Order does not reference fraud; no transcript of the proceedings was made; and no oral findings of fraud were made by the state court in sup-port of the sanctions imposed on Mary. Richard was granted a judgment in that amount, which is the subject debt he seeks to have determined nondischargeable under § 523(a)(2)(A) (Count II) and § 523(a)(6) (Count I). Trial was completed on January 26, 1996. At the close of Richard's case in chief, Mary moved for judgment in her favor pursuant to Federal Rule of Bankruptcy Procedure 7052, incorporating by reference Federal Rule of Civil Procedure 52(c). The Court reserved ruling. The matter was thereafter taken under advisement.

## III. APPLICABLE STANDARDS

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983). The burden of proof required for establishing an exception to discharge is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). To further the policy of providing the debtor a fresh start in bankruptcy, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Meyer v. Rigdon,* 36 F.3d 1375, 1385 (7th Cir.1994); *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985).

### A. The Fraud Claim Under Count II

Section 523(a)(2)(A) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) lists three separate grounds for dischargeability: actual fraud, false pretenses, and false representation. The Seventh Circuit requires the Court to apply a single test to prove the three types of misconduct even though intent is an integral part of "fraud" and not of "false pretenses"

and "a false representation." *See Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 674–76 (7th Cir.1995); *see also Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 957–58 (Bankr.N.D.Ill.1995).

■ In order to except "false pretenses," "fraud," or a "false representation" from dischargeability under § 523(a)(2)(A), Richard must establish the following elements: (1) Mary obtained the funds at issue from Richard through false pretenses or representations she either knew to be false, or made with such reckless disregard for the truth as to constitute willful misrepresentations; (2) Mary possessed the requisite scienter, i.e., she actually intended to deceive Richard; and (3) to his detriment, Richard justifiably relied on the misrepresentations. *See Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *Mayer*, 51 F.3d at 673; *In re Sheridan*, 57 F.3d 627, 635 (7th Cir.1995); *Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 525 (7th Cir.1992).

■ An intent to deceive may be inferred from a false representation which the debtor knows or should know will induce another to advance money to the debtor. *First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421, 423–24 (7th Cir. 1985). Fraudulent intent can be established by circumstantial evidence. *Union Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 215 (Bankr.N.D.Ill.1993); *Katahn Assoc., Inc. v. Wien (In re Wien)*, 155 B.R. 479, 488 (Bankr.N.D.Ill.1993).

■ What constitutes "false pretenses" in the context of § 523(a)(2)(A) has been defined as "implied misrepresentations or conduct intended to create and foster a false impression." *Bryson*, 187 B.R. at 959 (quoting *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990, 993 (Bankr.M.D.N.C.1994)); *see also In re Scarlata*, 112 B.R. 279 (Bankr. N.D.Ill.1990), *aff'd in part, rev'd in part*, 127 B.R. 1004, 1009 (N.D.Ill.1991), *aff'd in part*, 979 F.2d 521 (7th Cir.1992); *Itaparica, Ltd. v. Hargrove (In re Hargrove)*, 164 B.R. 768, 772 (Bankr.N.D.Okla.1994). The court in *Evans v. Dunston (In re Dunston)*, 117 B.R. 632 (Bankr.D.Colo.1990), *aff'd in part, rev'd*

*in part,* 146 B.R. 269 (D.Colo.1992), further defined "false pretenses" as follows:

> [A] series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor. . . .
>
> A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor. A "false pretense" is established or fostered willfully, knowingly and by design; it is not the result of inadvertence.

117 B.R. at 641. False pretenses do not necessarily require overt misrepresentations. Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor. *Bozzano*, 173 B.R. at 993.

■ With respect to the reliance element, the Seventh Circuit has been less than clear. *See Kimzey*, 761 F.2d at 423–24 (required the creditor's reliance to be reasonable); *Mayer*, 51 F.3d at 675–76 (backed away from the reasonableness requirement, without specifically overruling *Kimzey*, and defined reliance as "the conjunction of a material misrepresentation with causation in fact"); *Sheridan*, 57 F.3d at 635 (quoted the *Mayer* definition of reliance). The Court will consider the evidence in light of the recently articulated "justifiable reliance" standard enunciated in *Field*, rather than the higher burden of "reasonable reliance" set forth in *Kimzey* or the "actual reliance in fact" standard espoused in *Mayer*. According to the majority opinion in *Field*, "justifiable reliance" is a lower burden to prove than "reasonable reliance" and "does not mean that [the objecting creditor's] conduct must conform to the standard of the reasonable man." —— U.S. at ——, 116 S.Ct. at 444 (citation omitted).

## B. *The Willful and Malicious Claim Under Count I*

Richard further contends that the debt incurred as a result of the Sanctions Order is nondischargeable under § 523(a)(6). Section 523(a)(6) excepts from discharge any debt incurred by "willful and malicious injury," and provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

In order for a debt to be held nondischargeable under § 523(a)(6), Richard has the burden of proving that the injury he sustained, namely the attorney's fees he incurred in defending Mary's personal injury suit against him, resulted from an act that was both willful and malicious. *Dornik v. Maurice (In re Maurice)*, 138 B.R. 890, 896 (Bankr.N.D.Ill.1992), *aff'd*, No. 92 C 4043, 1992 WL 308535 (N.D.Ill. Oct. 19, 1992), *aff'd*, 21 F.3d 767 (7th Cir.1994) (quoting *Kimzey*, 761 F.2d at 424); *United Bank of Southgate v. Nelson*, 35 B.R. 766, 768 (N.D.Ill.1983); *Taradash v. Pokorny (In re Pokorny)*, 143 B.R. 179, 182 (Bankr.N.D.Ill. 1992); *Brill v. Dvorak (In re Dvorak)*, 118 B.R. 619, 627 (Bankr.N.D.Ill.1990); *Bristol Lumber Co. v. Hopkins (In re Hopkins)*, 82 B.R. 952, 953 (Bankr.N.D.Ill.1988). The term "willful" means deliberate or intentional, and "malicious" means wrongful and without just cause or excuse; it does not require ill will or specific intent to do harm. *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994) (collected citations omitted); *McCarthy v. McCarthy (In re McCarthy)*, 179 B.R. 876, 880 (Bankr.N.D.Ill.1995). Whether Mary acted willfully and maliciously is ultimately a question of fact. *Id.*

## IV. *DISCUSSION*

### A. *COUNT II*

Richard contends that because he procured auto insurance for the subject vehicle, Mary's subsequent personal injury lawsuit was fraudulent and thus, the fees of his attorneys, taxed to Mary by the Sanctions Order, are nondischargeable under § 523(a)(2)(A). He concludes that by accepting all the benefits under the terms of the Agreement, Mary had released him from her personal injury and other claims arising from the battery of May 20, 1987.

Mary counters that there is no proof of fraud. Rather, she alleges that the attorneys who represented her in both the dissolution and personal injury actions were perhaps negligent in their failure to point out the Agreement's effective date provisions or more adequately investigate the underlying basis of the personal injury suit. Mary argues that she did not realize the implications of the effective date of the Agreement when she signed it. Moreover, she contends that her personal injury action against Richard was not a representation to him on which he justifiably relied to his detriment for purposes of § 523(a)(2)(A).

The Court grants Mary's motion for judgment with respect to Count II and dismisses that count of the amended complaint for several reasons. First, Mary did not obtain any money, property, or services from Richard by suing him on her personal injury claim. Richard incurred and paid his attorney $18,130.50 to defend the matter. Mary did not get anything from Richard on that score. Rather, she was sanctioned by the state court for failing to make a reasonable inquiry into the factual basis of that suit before filing it. Mary did not secure any extension, renewal, or refinancing of credit from Richard by filing the lawsuit. At most she had the dubious personal satisfaction of forcing him to go through the ordeal and expense of the personal injury suit. That, however, is insufficient for purposes of § 523(a)(2)(A). Second, the state court made no finding of fraud on Mary's part in assessing the sanctions taxed to her. Third, this matter is to determine whether the debt Mary owes Richard as a result of the Sanctions Order is dischargeable under the Bankruptcy Code. This is not a direct or collateral attack on the judgment of dissolution or the Agreement because Mary allegedly fraudulently executed it or induced Richard to sign it, knowing that the vehicle was insured, but that she would subsequently sue him anyway for her released personal injury

claim. Richard's actions were taken to defend against Mary's personal injury suit, not in reliance on her representations to him. Insufficient evidence was adduced to show that at the time Mary signed the Agreement she planned then to sue Richard almost a year later, notwithstanding its terms. Therefore Richard's § 523(a)(2)(A) cause of action against Mary is dismissed.

■ The Court declines to grant Mary her requested attorney's fees and costs under 11 U.S.C. § 523(d) for her defense of this count of the amended complaint. The underlying debt owed Richard is a penalty imposed by the state court which arises from the Sanctions Order, and is not the type of "consumer debt" as defined in 11 U.S.C. § 101(8), which Mary incurred primarily for a personal, family, or household purpose. Thus, § 523(d) is inapplicable to the matter at bar.

## B. *COUNT I*

■ The results are different with respect to Richard's § 523(a)(6) cause of action against Mary. Mary's actions in filing and prosecuting the personal injury action against Richard were willful because they were deliberate and intentional. Her actions were also malicious for purposes of § 523(a)(6) because they were wrongful and found to be without just cause, which resulted in entry of the Sanctions Order against her. Mary's claim of absence of personal hatred, spite or ill will is of no import for purposes of applying the section.

■ This matter is similar to *Foran v. Lutz (In re Lutz)*, 169 B.R. 473 (Bankr. S.D.Ga.1994). The *Lutz* court held that sanctions imposed pursuant to Federal Rule of Civil Procedure 11 for filing an unfounded lawsuit were nondischargeable under § 523(a)(6). *Id.* at 478–79. *Accord Wash v. Moebius (In re Wood)*, 167 B.R. 83 (Bankr. W.D.Tex.1994) (doctrine of collateral estoppel applied to Rule 11 sanctions imposed on debtor and sanctions held nondischargeable under § 523(a)(6)); *Bank of Mississippi v. McIntyre (In re McIntyre)*, 96 B.R. 70 (Bankr.S.D.Miss.1989) (Bankruptcy Rule 9011 sanctions imposed for filing frivolous counterclaim held nondischargeable under § 523(a)(6)); *see also Papadakis v. Zelis (In re Zelis)*, 66 F.3d 205 (9th Cir.1995) (judgment obtained in state court for sanctions for a frivolous appeal had collateral estoppel effect for purposes of § 523(a)(6) and debt held nondischargeable); *Florida v. Ticor Title Ins. Co. of Cal. (In re Florida)*, 164 B.R. 636 (9th Cir. BAP 1994) (discovery sanctions assessed against debtor in state court held nondischargeable); *Marine Midland Bank, N.A. v. Huber (In re Huber)*, 171 B.R. 740 (Bankr.W.D.N.Y.1994) (sanctions imposed by New York Supreme Court given collateral estoppel effect and held nondischargeable under § 523(a)(6)). Mary's filing the personal injury suit without a reasonable basis caused Richard to incur substantial attorney's fees and costs to defend. Mary knew that he would incur such costs of defense when she also attempted to collect the damages she claimed from him. It was her intent at that time that is critical for purposes of § 523(a)(6), not her intent at the time she signed the Agreement. The Court flatly rejects Mary's argument that she did not realize the import of the express terms of the Agreement. Mary is a very intelligent, educated, and an articulate person in her own right, and had the advice and benefit of counsel of her own choosing at all relevant times.

■ The Court also rejects Mary's defense of reliance on the advice of counsel as articulated in *In re Murray*, 116 B.R. 473, 476–77 (Bankr.S.D.Va.1990). *Murray* is factually distinguishable because it involved a failure to surrender collateral on advice of counsel defense that was held to constitute actionable conversion. *Murray* cited *In re Breitling*, 133 F. 146 (7th Cir.1904), which, in pertinent part, opined that before the advice of counsel defense may be pleaded, the debtor must have acted on the advice as a matter of law. The Sanctions Order expressly found that Mary violated the applicable rule by failing to make a reasonable inquiry into the factual basis of the personal injury suit before filing same. The Court is not willing to functionally eviscerate the Sanctions Order. Furthermore, if Congress had intended to provide debtors with an affirmative defense based on the advice of their attorneys it could have so expressly legislated.

## V. *CONCLUSION*

For the foregoing reasons, the Court denies Mary's motion under Bankruptcy Rule

7052 as to Count I and grants judgment for Richard on that count. Pursuant to § 523(a)(6) the debt is nondischargeable. The Court dismisses Count II on Mary's motion and holds the debt is dischargeable under § 523(a)(2)(A).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.