In re William Dennis HUBER, Debtor.

MARINE MIDLAND BANK,
N.A., Plaintiff,

v.

William Dennis HUBER, Defendant.

Bankruptcy No. 93–12782 K.
Adv. No. AP 93–1308 K.

United States Bankruptcy Court,
W.D. New York.

July 1, 1994.

Michael T. Ryan and George L. Cownie, Buffalo, NY, for Marine Midland Bank.

William Dennis Huber, pro se.

## MICHAEL J. KAPLAN, Chief Judge.

This is a Chapter 7 case in which an Adversary Proceeding was commenced by the plaintiff, Marine Midland Bank ("Marine") under 11 U.S.C. § 523(a)(6)[1] seeking a declaration that two sanction awards in favor of Marine[2] must survive discharge in this lawyer-debtor's voluntary, personal bankruptcy. By Motion for Summary Judgment, Marine argues that such declaration is commanded as a matter of law, by virtue of the doctrine of collateral estoppel.

The Debtor, William Dennis Huber ("Huber") argues that there is a triable issue of.

---

**1.** 11 U.S.C. § 523(a)(6) excepts from discharge any debt "for wilful and malicious injury by the debtor to another entity or to the property of another entity."

**2.** The first sanction award was rendered by the United States District Court of this District, Honorable Richard J. Arcara, United States District Judge, by Decision and Order dated September 23, 1993, in the sum of $42,262 in attorney's fees. That award and the two sanctions decisions upon which it was based are final. The other sanctions award emanates from a decision rendered by State Supreme Court on January 19, 1993. Although the amount of the State Court award had not been determined by the State Court by the time the Debtor sought bankruptcy relief, the decision awarding attorney's fees and costs to Marine is final, and Marine has submitted affidavits to State Court seeking a total of $109,890 in attorney's fees and costs in connection with that decision. As to the State award, Marine initially asked that the present court determine the appropriate amount of damages arising from the Debtor's conduct, as well as declare that amount to be non-dischargeable. On June 4, 1994, the State Court properly rendered its decision as to amount, $78,759.50 to Marine and $46,262.00 to a non-plaintiff here, Utica Mutual Insurance Co.

fact as to whether the sanctions are properly characterized as arising out of a "wilful and malicious injury." He believes that complete discovery and a trial by jury in this Court will prove that his actions in suing Marine, its lawyers, in insurers, its employees and others in the nine civil actions that he commenced (resulting in the award of sanctions against him) were an innocent quest for justice. (He has already filed extensive discovery requests and notices to depose in the present litigation.)

If Marine is entitled to summary judgment, it will be spared what it believes to be a continuation of what previous Courts have found to be vexatious, bad faith efforts by Huber to intimidate it, its lawyers, and its employees from efforts to collect student loans he owes Marine.[3]

If Marine is not so entitled, then Huber will get the trial that he claims he unsuccessfully sought to obtain in the numerous lawsuits he commenced against Marine and others.

The legal issue presented is that of the preclusive effect, if any, of the sanctions decisions and awards, for section 523(a)(6) purposes.

If there is a novel element to the issue at bar, it is that the sanctions awards themselves were not the subject of plenary adjudication in the prior courts. The Federal Court sanctions award was rendered as punishment for the Debtor's decision to pursue, and conduct in pursuing, various meritless civil claims against Marine. The sanctions were awarded by the Bench, on motion, without evidentiary hearing or trial directed specifically thereto, as discussed later. The State Court decision similarly was the result of a motion under N.Y.Civ.Prac.L. & R. § 8303–a and was not itself the subject of the type of plenary proceedings that an action for abuse of process (or the like) might have spawned. That neither of the sanctions awards were rendered as "decisions after trial" makes resort to excellent published expositions of applicable principles somewhat less than fully satisfying, since (as discussed later) those expositions usually address pre-bankruptcy judgments rendered after trial on the merits of a complaint, indictment or other similar device.

For reasons to be discussed herein, the distinction between plenary adjudication and the award of sanctions on proceedings initiated by motion during the course of civil litigation not directed specifically thereto, is not decisive in the case at the present Bar.

■ This Court finds that (1) the sanctions awards were awards for "wilful and malicious" injuries by the Debtor, (2) they were previously fully and fairly adjudicated in the Courts that rendered the awards, and (3) were properly before those courts and were necessarily adjudicated by those Courts according to standards and a burden of proof consistent with 11 U.S.C. § 523(a)(6).[4] Consequently, this Court will not force Marine to relitigate, for dischargeability purposes, the matters decided by those Courts. While a determination of dischargeability is exclusively the province of this Court, this Court's inquiry ends once it has made each of the findings enumerated above, exercising its own independent discretion in doing so, and its exclusive authority to interpret 11 U.S.C. § 523(a)(6) at the trial level.

### ANALYSIS

#### A. The proceedings in the Pre-bankruptcy Courts.

The facts of Huber's actions against Marine Midland Bank are a matter of record in various public offices and were set forth by the U.S. District Court of this District in its decision dated September 4, 1992. They are quoted here in pertinent part:

Between 1976 and 1983, Huber applied for and received a number of student loans from Marine. On May 31, 1988, Huber commenced an action in New York State Supreme Court ("Huber I") alleging, in part, that Marine on several occasions gave

---

3. These student loans were declared non-dischargeable by this Court. See the Decision and Order of March 21, 1994 in A.P. # 93–1306, 169 B.R. 82. Huber has appealed that decision.

4. The burden of proof under § 523(a)(6) is "a fair preponderance of the evidence"; see *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

incorrect information regarding payment status of Huber's student loans to credit bureaus and that Marine breached its duty to Huber by not correcting the information when informed that it was correct.

... [in June, 1988, Marine obtained TRW reports so that they could examine the information that Marine had reported to TRW regarding the student loan and respond to Huber's assertions in Huber I.]

On March 5, 1990, Huber commenced an action in [the United States District Court for the Western District of New York], Huber II, against Marine, Utica Mutual Insurance Company ... and the law firm of Maghran, McCarthy & Flynn ... alleging that they violated the 'Fair Credit Reporting Act' ... by obtaining the June 20, 1988 and June 22, 1988 consumer reports involving Huber. The Complaint in Huber II seeks damages of $750,000. On June 6, 1990, Marine filed a Motion for Summary Judgment seeking to have the Complaint in Huber II dismissed. The Summary Judgment motion had attached to it, as exhibits, copies of Huber's student loan applications.

On June 19, 1990, Huber filed another action against Marine in New York State Supreme Court (Huber III) asserting various causes of action allegedly arising from Marine obtaining the credit reports on June 20, 1988 and June 22, 1988, and subsequent attaching of these reports and Huber's student loan applications as exhibits to Marine's motion for summary judgment in Huber II. Utica and Maghran were also named as defendants in Huber III. On July 9, 1990, Huber filed an amended Complaint in Huber III adding George L. Cownie, Linda A. Hottum and Peter J. Murrett, III as defendants. Cownie and Murrett are attorneys who were representing Marine. Hottum was an employee of Marine. On July 26, 1990, Huber filed a motion to amend the complaint in Huber II to add Cownie, Hottum and Murrett as defendants. Huber subsequently stipulated to dismissal of Utica and Maghran from Huber II and has voluntarily dismissed Utica, Maghran and Murrett from Huber III.

On October 12, 1990, Huber withdrew his motion to amend the complaint in Huber II and filed Huber IV in [the United States District Court for the Western District of New York] asserting claims under the Internal Revenue Code ... and the Right to Financial Privacy Act ... against Marine, Cownie and Hottum. Specifically, Huber alleged that by including his student loan applications as exhibits in Marine's summary judgment motion in Huber II, defendants unlawfully disclosed certain income tax information that was included as part of the student loan applications. The complaint in Huber IV sought $56,000,000 in damages.

On December 9, 1990, Huber commenced yet another action against Marine in New York State Supreme Court (Huber V) asserting various causes of action including violations of the Higher Education Act of 1965 ... and N.Y.Gen.Bus.L. §§ 380, 601, breach of contract, gross negligence, extortion, libel and intentional infliction of emotional distress. Huber alleged that these claims arose from Marine's attempt to collect on student loans that were not due and reporting to credit bureaus, between November 1989 and December 1990, that Huber's loans were delinquent in 1987 and 1990.

On April 2, 1991, Huber commenced an action against Marine in the United States District Court for the Middle District of North Carolina ("Huber VI") alleging various causes of action including violations of the Higher Education Act of 1965 ... and N.Y.Gen.Bus.L. § 601, gross negligence and libel. Huber subsequently voluntarily dismissed this action.

On April 23, 1991, Huber commenced Huber VII in [the United States District Court for the Western District of New York] against Marine alleging that Marine violated the Higher Education Act, 20 U.S.C. § 1080(a). On December 6, 1991, Huber filed an amended complaint adding causes of action under RICO. In his amended complaint, Huber asserted that Marine's action in attempting to collect on his student loans and reporting his payment status to credit bureaus when the

loans were in fact not due, constituted extortion and mail fraud.

At the same time Huber commenced Huber VII, he also commenced a separate action in New York State Supreme Court ("Huber VIII") asserting the pendent state law claims that had previously been included in the action filed in the Middle District of North Carolina, Huber VI.

On October 28, 1991, the Hon. Vincent E. Doyle, Supreme Court Justice, New York State Supreme Court, Erie County, issued an Opinion in which he granted defendants' motion for summary judgment in Huber III.

On December 4, 1991, Justice Doyle issued an Opinion in which he granted Marine's motions for summary judgment in Huber I, Huber V and Huber VIII.

On April 6, 1992, Huber commenced another action in [the United States District Court for the Western District of New York] ("Huber IX") against Marine, Cownie and Maghran under N.Y.Jud.L. § 487 claiming that Justice Doyle's December 4, 1991 Opinion was procured by fraud and deceit. On March 26, 1992, Huber moved before Justice Doyle in New York State Supreme Court to vacate the December 4, 1991 Opinion, pursuant to N.Y.Civ.Prac.L. & R. § 5015(a)(3), based on the alleged misrepresentations made to the court by the defendants.

On September 4, 1992, [the United States District Court for the Western District of New York] issued three separate decisions granting defendant's motions for summary judgment in Huber II, Huber IV and Huber VII. Also on September 4, 1992, the Court issued a decision in Huber IX, staying that action until Justice Doyle [decided] Huber's motion to vacate the December 4, 1991 Opinion.

The Court notes that, on or about November 1, 1991, Huber filed a verified petition of grievance against George L. Cownie and Peter J. Murrett, III with the Attorney Grievance Committee of the New York State Supreme Court, Appellate Division, Fourth Department, claiming that Cownie and Murrett: (1) made misrepresentations to courts of law; (2) concealed and failed to disclose evidence; (3) made false sworn statements; (4) counseled their client in conduct that was unlawful; (5) failed to inform the courts of the false statements and unlawful conduct; [and so forth.][5]

Huber II, 90–CV–235A;

Huber IV, 90–CV–1058A;

Huber VII, 91–CV–267, at 3–7,

(W.D.N.Y. Sept. 4, 1992)

In the context of a motion by Marine and the other defendants in Huber II, IV and VII (Huber disagrees with the numbering) for sanctions under Rule 11, F.R.Civ.P., the Court expressly stated that "instead of relying solely on Rule 11, the Court will rely primarily on its inherent power to impose sanctions for bad faith conduct on the part of litigants and their attorneys," Id. at 8, citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). (*Chambers* made it clear that a District Court has inherent authority to sanction parties appearing before it for acting "in bad faith, vexatiously, wantonly, or for oppressive reasons.")

The District Court found that Huber indeed "has acted in bad faith, vexatiously, wantonly and for oppressive reasons throughout this litigation [Huber II, IV and VII, at 9]." The District Court further expressly stated that "the Court recognizes, when imposing sanctions, it must comply with the mandates of due process.... *However, no hearing is required in this case because Huber's sanctionable conduct has occurred either in the presence of the Court or in papers he has filed.*"[6]

That Court found that Huber "has implemented a scheme to harass Marine by running up the cost of litigation to the point where Marine will no longer find it profitable

---

5. For his part, Huber argues that each of the actions he commenced were independently justified. The sanctioning courts heard those arguments and disagreed with him.

6. This finding is the one most central to Huber's arguments here, for Huber wants the present Court to find that the lack of trial defeats Marine's effort to set up collateral estoppel. This will be discussed, and rejected, later in this decision.

to pursue Huber for repayment of his loans. In addition the Court finds that Huber has attempted to commit fraud upon this Court by making misrepresentations as to his status as a full-time student." Id. at 9.

The Court made other important statements, e.g.:

"The filing of multiple lawsuits against a party for the purpose of harassment is an abuse of the judicial process and cannot be tolerated by this Court. While his claims may not be frivolous, his motives for filing the claims were improper." Id. at 10.

"... it was Huber's intention to abuse the judicial process." Id. at 10.

"Another indication of Huber's bad faith is the amounts of damages he sought in the different actions he has filed ... when viewed in light of the allegations made against Marine in each of the complaints, these damage amounts are outrageous." Id. at 13.

"Further evidence of Huber's bad faith are his attempts to attack Marine's attorneys and employees in their personal capacity. ... when these actions are viewed in light of Huber's other conduct in these cases, it is clear that, as part of his overall scheme, Huber intended to intimidate Marine's attorneys and employees into not representing Marine's interests." Id. at 13.

"Huber misrepresented to the Court that in May of 1990 he was a student at Liberty University and that his program of study at Liberty University was not a correspondence course. These misrepresentations amount to an attempt by Huber to commit a fraud upon this Court and are sanctionable under the Court's inherent power." Id. at 15.

The District Court concluded:

In sum the Court finds that Huber, in an effort to dissuade Marine from trying to collect on his student loans, entered into a scheme to harass and intimidate Marine through abuse of the judicial process. He has filed multiple baseless and meritless lawsuits against Marine and its attorneys and employees. In light of the nature of the allegations made in these lawsuits, and their obvious lack of merit, they seek out-

rageous amounts of damages that could not reasonably have been based on Huber's actual injuries. Huber has admitted during the course of court proceedings that he threatened to sue Marine every month until Marine acquiesced to his demands. Huber has also attempted to commit fraud upon this Court by misrepresenting his status as a student at Liberty University and the "correspondence" course nature of his program of study there. In addition he attempted to intimidate Marine's attorneys by suing them in their personal capacity, filing grievances against them with the grievance committee and making frivolous sanctions motions against them. When all of these factors are viewed together, they clearly show that Huber was operating in bad faith, vexatiously, wantonly and for oppressive reasons. Therefore his conduct is sanctionable under the Court's inherent power. See *Chambers, Sassower v. Field,* No. 91–7891, slip op. at 6398 [973 F.2d 75] (2d Cir. August 13, 1992). Id. at 15, 16.

The District Court could not have been more cautious in its holding. "The Court recognizes that a District Court's powers to sanction attorney and litigant conduct must be exercised with great restraint and discretion due to their potency," it said. "Thus, when there is bad faith conduct in the course of litigation that could be adequately sanctioned under either Rule 11 or 28 U.S.C. § 1927, the Court should rely on those statutes rather than its inherent power.... However 'if in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power.'...." It added:

In this case, while some of Huber's bad faith conduct may be sanctionable under Rule 11 and § 1927, it is so intertwined with conduct that only the Court's inherent powers can address that it would require extensive and needless litigation in order for the Court to properly determine which conduct is sanctioned by which authority. Instead, the Court will rely primarily upon its inherent power, although it will also impose sanctions under Rule 11 and § 1927. Id. at 16, 17.

The District Court held: "In light of the Court's findings that Huber has acted in bad faith throughout this litigation, the Court will award as a sanction to Marine and the other defendants all attorneys fees and costs associated with Huber II, Huber IV, and Huber VII. The Court will also fine Huber $1,000 for his abuse of the judicial process ... The Court shall require Marine and the other defendants to submit affidavits of reasonable attorneys fees and costs associated with Huber II, Huber IV and Huber VII. The Court recognizes that before it can impose a sanction of attorneys fees, it must take into account the financial circumstances of the plaintiff ... Thus, in order to insure that Huber receives due process, the Court will allow Huber to respond to the affidavits of attorneys fees and costs. Huber's responding affidavit should raise any objections to the reasonableness of Marine attorneys fees and costs, and should state any reasons why his financial circumstances are such that the sanctions will be unduly burdensome ... In addition to the monetary sanctions stated above, the Court will also enjoin Huber from bringing any further actions in this Court against Marine or its attorneys, officers, agents or employees based on the transactions underlying Huber II, Huber IV, Huber VII and Huber IX without prior permission from the Court. Huber's onerous, multiplicious and baseless litigation against Marine poses a direct threat to this Court's ability to carry out its constitutional functions." Id. at 18, 19.

Although the September 4, 1992 decision of the District Court was initially rendered in Huber II, Huber IV and Huber VII, it was also incorporated into a February 24, 1993 decision of the District Court in and made applicable to, Huber IX.

The sanctions decisions of the State Court were to similar effect. Thus, in a decision entered in Huber I, Huber V and Huber VIII, State Supreme Court Justice Vincent E. Doyle ruled, on January 19, 1993, that there should be an award against Huber under N.Y.Civ.L. & R. § 8303–a. The Court explained that provision as follows:

Particularly pertinent in part to this case is subdivision (c) which specifies alternative grounds for a finding of frivolousness both of which require "bad faith:"

(1) The claim or defense was solely to delay or prolong the litigation or to harass or maliciously injure another; or

(2) The claim or defense had no reasonable basis in law or fact. . . .

A review of the record in this case reveals that the actions commenced in this Court: Huber I, Huber III, Huber V and Huber VIII, as well as actions filed in the United States District Court for the Western District of New York: Huber II, Huber IV and Huber VII, have all been dismissed on motions for summary judgment as meritless. Also, this Court finds that Huber has commenced and continued baseless and meritless litigation in bad faith primarily to harass Marine, its employees and attorneys in an attempt to dissuade Marine from trying to collect on his student loans. Besides the lack of merit in all of Huber's claims, there are several other factors clearly demonstrating Huber's bad faith and intention to harass Marine.

Huber I, 88–6748,

Huber V, 91–213,

Huber VIII, 91–4083,

at 17, 18 (N.Y.Sup.Ct.

January 19, 1993)

After a careful recitation of the elements and factors leading to its decision (similar to the recitation by the District Court), that Court awarded to Marine and the other named defendants, attorneys' fees and costs against Huber, the amount to be decided after affidavits of fees and costs were submitted and after Huber had an opportunity to respond thereto.

Huber filed the present bankruptcy petition on September 17, 1993, before a dollar amount was established in State Court pursuant to the State Court sanctions decision. [See footnote 2, above.]

On October 4, 1993, the United States Court of Appeals for the Second Circuit affirmed, on Huber's appeal, the District Court's award of sanctions against Huber.

Proceedings are continuing in the District Court as to the fines that were assessed and other matters properly before that Court.

### B. The Governing Principles.

In moving for summary judgment, Marine argues that it ought not to be required to "relitigate" the matter of sanctions; that it is entitled to a judgment, as a matter of law, that Huber's actions were wilful and malicious under 11 U.S.C. § 523(a)(6).

The principles governing the preclusive effect of non-bankruptcy court decisions have been extensively examined.[7]

Consider the illustrative and persuasive case of *Spilman v. Harley*, 656 F.2d 224 (3d

Cir.1981). In that case the plaintiff had obtained a judgment against the debtor in State Court for personal injuries caused when the debtor, allegedly intoxicated, had driven his car onto the sidewalk, striking the plaintiff. The debtor moved for judgment on the pleadings on the grounds that the plaintiff had not shown that the debtor had acted wilfully or maliciously and that the State Court judgment specifically recited that the State Court had found "no wanton, wilful misconduct" by the debtor. The Bankruptcy Court essentially agreed with the debtor and declared the debt discharged. The District Court affirmed.

The Circuit reversed. It noted that some courts had held that collateral estoppel

---

**7.** See, in particular, the excellent exposition by Jeffrey T. Ferriell, "The Preclusive Effect of State Court Decisions in Bankruptcy," 58 American Bankruptcy Law Journal 349 (1984), and continued at 59 American Bankruptcy Law Journal 55 (1985).

Although any inquiry in such regards must begin with the United States Supreme Court's decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), that case is of little guidance here. That case addressed the dischargeability provision of the Bankruptcy Act of 1898—section 17 thereof, which had been codified at former 11 U.S.C. § 35.

The question before the Court was whether a Bankruptcy Court may consider evidence extrinsic to the Judgment and Record of a prior state suit when determining whether a debt previously reduced to judgment is dischargeable. In that case, the plaintiff had been guarantor of a certain obligation of the defendant-debtor, and the plaintiff had been sued in State Court on the guarantee. He had cross claimed in State Court against the debtor, alleging that he had been induced to sign a guarantee "by misrepresentations and non-disclosures of material facts." The suit was settled by stipulation, and neither the stipulation nor the resulting judgment indicated the cause of action on which the debtor's liability to the plaintiff had been based. Shortly thereafter, the debtor filed bankruptcy and the plaintiff commenced a dischargeability action alleging fraud, deceit, and malicious conversion. The debtor sought to bar "relitigation" of the nature of his debt to the plaintiff, claiming that the prior state court proceeding had not resulted in a finding of fraud and that res judicata prohibited the plaintiff from now seeking to establish fraud.

The Court stated that "here careful inquiry reveals that neither the interest served by res judicata, the process of orderly adjudication in State Courts, nor the policies of the Bankruptcy Act would be well served by foreclosing [the plaintiff] from submitting additional evidence to prove his case." *Brown* at 132, 99 S.Ct. at 2210.

The Court reasoned that when dischargeability issues are not identical to those arising under State Law, the parties have little incentive to litigate them. "In the collection suit, the debtor's bankruptcy is still hypothetical. The rule proposed by [the debtor] would force an otherwise unwilling party to try [dischargeability] questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future. In many cases, such litigation would prove, in the end, to have been entirely unnecessary.... So long as a debtor is solvent, the debtor and creditor alike may prefer a simple contract suit to complex tort litigation." *Brown* at 135, 99 S.Ct. at 2211.

The Court also described the distinction between res judicata and "the narrower principle of collateral estoppel." "Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.... If, in the course of adjudicating a state-law question, a State Court should determine factual issues using standards identical to those of [the dischargeability provision of the Bankruptcy Law] than collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the Bankruptcy Court." *Brown*, 442 U.S. at 139, 99 S.Ct. at 2213.

It can be seen that in *Brown v. Felsen* it was the Debtor who sought to avoid "relitigation" of matters which he believed might have been litigated previously. In the present case the roles are reversed. The debtor argues that he is entitled to plenary trial as to the merits of Marine's dischargeability complaint, while Marine believes that the wilfulness, maliciousness of Huber's acts were previously "actually and necessarily decided" in its favor, and that collateral estoppel bars relitigation. Since *Brown v. Felsen* expressly addressed res judicata only, and involved an extremely different fact circumstance, it is of little guidance in the present case.

should not apply in dischargeability determinations because of the Bankruptcy Court's exclusive jurisdiction over dischargeability questions. It further noted that some courts which hold that collateral estoppel does not generally apply will accept the facts recited in a judgment as true where the judgment was a consent judgment or where the bankrupt consented to certain allegations. It noted that in the Ninth Circuit, a state court judgment may establish a prima facie case of non-dischargeability, but that the bankrupt could rebut, and the Bankruptcy Court would not be bound by the determinations of the state court. Some other courts, the Third Circuit noted, would apply collateral estoppel where the issue was previously litigated by the parties. The Third Circuit stated that applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown v. Felsen* and the exclusive jurisdiction of the bankruptcy courts, while at the same time encouraging judicial economy.

The Third Circuit correctly stated:

The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has exclusive jurisdiction to make that legal conclusion. It must apply the statute to the facts and decide to discharge or not. Therefore, res judicata does not apply to prevent litigation of every issue which might have been covered in the State Court proceeding on the debt. However, that Congress intended the Bankruptcy Court to determine the final result—dischargeability or not—does not require the Bankruptcy Court to redetermine all the underlying facts. As the Court held in *Brown,* where the facts necessary for a dischargeability determination were not necessary to the determination in the prior judgment, the parties should not be bound or else the parties would always have to anticipate future bankruptcy proceedings and the State Courts would be deciding facts not necessary to the state proceedings but only relevant to a possible future bankruptcy proceeding. In effect, State Courts would then be deciding issues directly concerning dischargeability, contrary to congressional intent. However, where the factual issues necessary for dis-

chargeability determination were also necessary to the State Court determination, the parties would not have to anticipate the bankruptcy proceedings and the State Courts would not be determining issues irrelevant to the State proceedings. Collateral estoppel is applied to encourage the parties to present their best arguments on the issues in question in the first instance and thereby save judicial time. There is no reason to suppose that parties will not vigorously present their case on issues necessary to the State Court proceeding or that the Bankruptcy Court will be any more fair or accurate than the State Court in the determination of the facts. Thus, there is no reason to allow relitigation of facts previously litigated which were necessary to the outcome of that prior litigation. This Court holds that where all the requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues.

Collateral estoppel requires that the precise issue in the later proceedings had been raised in the prior proceeding, that the issue is actually litigated, and that the determination was necessary to the outcome. . . .

If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the Bankruptcy Court. . . .

Thus, before applying the doctrine of collateral estoppel, the Bankruptcy Court must determine if the issue was actually litigated and was necessary to the decision in the State Court. To do this the Bankruptcy Court should look at the entire record of the State proceeding, not just the judgment, . . . or hold a hearing if necessary. . . . *Spilman,* at 227, 228.

Examining the record, the Third Circuit could not determine whether the state court's "finding of no wantonness or wilfulness" was or was not a necessary finding. It also found that there was no determination that the definition of wantonness and malice for purposes of the State Traffic Code is the same as the definition of wilfulness and malice for

dischargeability determinations: "Thus," the Court stated, "even if there were a factual basis for the state court to make a finding of no wanton or wilful misconduct the Bankruptcy Court would be required to apply the bankruptcy dischargeability standard to those facts." *Spilman,* at 229.

The Third Circuit directed the Bankruptcy Court to determine, by looking at the entire state record, whether the issue of wilful and malicious action on the part of the Debtor was actually litigated and was necessary to the State Court decision. "Only if that is so is [the plaintiff] estopped to argue the claim is not dischargeable. If not, [the plaintiff] is not estopped and must be given the opportunity to present evidence to the Bankruptcy Judge that [the debtor] did wilfully and maliciously cause injury to her." *Spilman,* at 229.

It can be seen that the *Spilman* case, though instructive as to the law, is not directly on point. In the *Spilman* case the creditor sought the opportunity to put in additional evidence to prove that the injury was wilful and malicious, and the Third Circuit granted the plaintiff that opportunity. Here, the creditor believes that the decisions by Judge Arcara and Justice Doyle did constitute a finding of wilful and malicious injury, and it argues that the Debtor ought not to be permitted to relitigate those findings in his defense to this dischargeability complaint.

This is not an instance in which the Debtor simply desires that the Bankruptcy Court make an independent finding of fact based upon a review of the existing record, so that all rights would be served if this Court were to deny application of collateral estoppel but limit consideration to its own examination of the record of proceedings before the District Court and the State Court.[8] Huber has already made substantial discovery demands here, wherein (when viewed in the light most favorable to Huber) he seeks to obtain evidence to prove that he was the victim of wrongful conduct by Marine and others, and that the litigation activities that resulted in the award of sanctions against him were not undertaken maliciously.

(By any fair measure, however, portions of the demands are clearly overreaching and onerous, calling for production of, for example, "All affidavits signed and filed in all courts in all [Huber] actions . . ."; "All briefs and memoranda of law signed and filed in all courts in all [Huber] actions. . . ." Furthermore, these demands are nothing new in the long history of Huber's attacks upon Marine. Also, Huber improperly sent copies of the deposition notices directly to deponent/employees of Marine along with individually "highlighted" copies of penal law provisions governing perjury. He even sent a letter to Marine's in-house counsel warning "I'll also have some questions for Justice Doyle about his contradictory opinions. (How do you think he'll explain them?)." Justice Doyle is the State Supreme Court Justice whose sanctions award is one subject of the litigation here.)

Again viewed in the light most favorable to Huber, the question before the present Court is whether an intelligent and well-educated, legally-trained person who has lost a number of lawsuits may so fervently believe that the various adverse decisions were wrong (or so fervently believe that they were procured by the opponent's wrongful behavior), that he is free to engage in vexatious conduct, and incur sanctions therefor, yet ultimately get to submit his version of the "rightness" of his cause to a jury when he seeks shelter in Bankruptcy Court.

Huber fails to offer to this Court anything not already adjudicated in the previous Courts. Rather than claiming that his sanctionable actions were the consequence of pique; or of some illness he was suffering; or of zealous sacrifice; or of some well-meaning and excusable misunderstanding of the proper uses of the judicial process; or of longing of faith; or of some influence coercing his conduct, or the like, he claims that the Courts that found his actions to be sanctionable were simply wrong. It is the basis of his belief that those Courts were wrong, that he wants to put to a jury here. He may not do so.

---

**8.** See the text accompanying footnotes 321–324 in *Ferriell,* "The Preclusive Effect of State Court

Decisions in Bankruptcy (second installment)," 59 American Bankruptcy Law Journal 55.

To say that there can be no malice when one has had many days in Court, and lost, but nonetheless injures his opponents because he believes the cause to be just, invokes an "ends justifies the means" brand of logic which, if applied to 11 U.S.C. § 523(a)(6) would have anarchical results.

The proper place for Huber to have fulfilled his aim to "have his name cleared ... of the allegations of wilful intent to maliciously injure Marine" was in the Courts that found that he had such wrongful intent.

As another Court has said: " 'The bottom line ... is very simple. .The debtor has had his day in court and lost.' The issues of intent and malice were fully litigated and necessarily determined in the [prior] proceedings, and the bankruptcy court's application of collateral estoppel [is] proper." [9]

## DISCUSSION

■ In most instances in which collateral estoppel is placed at issue in the context of a Bankruptcy Court determination of dischargeability, the debt in question is a judgment debt awarded by a jury or other finder of fact upon the allegations of a complaint or other pleading, after opportunity for discovery and trial. Here, the debts in question (the sanctions awards themselves) were rendered on sanctions motions in connection with or after dispositive pre-trial motions, limiting his discovery opportunities and precluding trials. Thus Huber argues: "The issue of attorneys fees was never an issue in the previous courts. The fees were awarded on the basis of the previous courts' attempting to attribute to Huber [10] a malicious intent to injure Marine with no discovery and no trial.... This is an issue for a jury to decide and Huber has demanded a trial by jury.... Huber will oppose any dismissal of this action without a trial since he is entitled to have his day in court, to have his name cleared by a jury of the allegations of wilful intent to maliciously injure Marine."

While it is true that his intent was never the subject of trial, he is in error in believing that it was not fully and fairly adjudicated. He thinks that a "full and fair *opportunity* to litigate" [11] requires that he have received favorable decisions on all of the discovery disputes and dispositive motions in the earlier cases.

Here there is a total identity of (1) the findings upon which the sanctions were based, (2) the issues that were (fully and fairly) adjudicated in the various plenary lawsuits commenced by Huber against Marine, and (3) the issues which Huber wishes to try to a jury in this dischargeability proceeding. There is a confluence that leaves no doubt that this proceeding is ripe for adjudication and for resolution in favor of Marine, if not as a matter of law, then as a matter of the sound discretion of this Court after careful examination of the matters and proceedings in the pre-bankruptcy courts.

First in the examination is the question of whether the District Court and the State Supreme Court findings constituted findings that Huber acted wilfully and maliciously. For purposes of section 523(a)(6) it has been said:

An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will. The word 'wilful' means 'deliberate or intentional,' a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a wilful and malicious injury. It has been said that this category of liabilities excepted from discharge 'contemplates something more restricted than malice in the broader sense,' and covers all cases in which the facts of intent and malice are judicially ascertained, irrespective of the character of the allegations made by the party. Injuries

9. *In re Condict*, 71 B.R. 485, 488 (N.D.Ill.1987).

10. Huber refers to himself in the third person throughout his written submissions.

11. *Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Khandhar v. Elfenbein*, 943 F.2d 244 (2nd Cir.1991).

within the meaning of exception are not confined to physical damage or destruction; but an injury to intangible personal or property rights is sufficient.. ..

A claim or judgment based merely upon negligence does not necessarily constitute a wilful and malicious injury within the exception even if the negligence is alleged to be reckless and wanton. Under this paragraph, 'wilful' means deliberate or intentional. *Tinker v. Colwell,* decided under section 17a(2) of the former Bankruptcy Act, held that a looser standard is intended, and to the extent that this and other cases have applied a "reckless disregard" standard they are overruled.

3 Collier on Bankruptcy, 15th Ed. ¶ 523.16 [No. 1] [Citations omitted.]

In light of the above, it is important that this Court be certain that the earlier findings were not findings of mere negligence or recklessness, and that in fact the issues are "identical" in the sanctioning courts and this Court.[12] In his September 4, 1992 Order, the District Court Judge stated that Huber's misrepresentations to the Court "amount to *an attempt by Huber to commit a fraud upon this Court* and are sanctionable under the Court's inherent power." [Page 15.] Huber II, IV, VII at 15.

"In sum, the Court finds that Huber, in an effort to dissuade Marine from trying to collect on his student loans, entered into *a scheme to harass and intimidate Marine through abuse of the judicial process.* He has filed multiple baseless and meritless lawsuits against Marine and its attorneys and employees. In light of the nature of the allegations made in these lawsuits, and their obvious lack of merit, they seek outrageous amounts of damages that could not have reasonably been based on Huber's actual injuries. Huber has admitted during the course of court proceedings that he threatened to sue Marine every month until Marine acquiesced to his demands. Huber has also attempted to commit fraud upon the Court

by misrepresenting his status as a student at Liberty University and the 'correspondence course' nature of his program of study there. In addition, *he attempted to intimidate* Marine's attorneys by suing them in their personal capacity, filing grievances against them with the Grievance Committee and making frivolous sanctions motions against them. When all of these factors are viewed together, they clearly show that *Huber was operating in bad faith, vexatiously, wantonly and for oppressive reasons.*" Id. at 15, 16.

"Huber's *onerous, multiplicious and baseless litigation* against Marine poses a direct threat to this Court's ability to carry out its constitutional functions." Id. at 19.

In his February 24, 1993 Order he stated, "the Court finds that Huber's actions in filing and pursuing Huber IX, which in light of Justice Doyle's January 19, 1993 opinion is meritless, are part of his *ongoing scheme to harass Marine* and further evidences Huber's *bad faith* in this and Huber's other lawsuits." Huber IX at 9.

At an earlier stage in this very dischargeability proceeding, Marine sought an order from the District Court withdrawing the reference of the proceeding under 28 U.S.C. § 157 so that the dischargeability of the District Court's sanctions order may be determined by the District Court itself. In denying that motion, by order dated April 18, 1994, the District Court reiterated that it had "found that defendant had acted *in bad faith, vexatiously, wantonly and for oppressive reasons* throughout the litigation ... [and] that defendant's actions in filing and pursuing Huber IX were part of his *ongoing scheme to harass* plaintiff and evidence defendant's *bad faith* in pursuing that and other litigation."

▮ The District Court's holdings were expressly stated to have been rendered in reliance upon the case of *Chambers v. Nasco, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d

---

**12.** See, for example, *In re Braen,* 900 F.2d 621 (3rd Cir.1990) wherein the Court stated "collateral estoppel cannot preclude a debtor from contesting that he acted maliciously if the decision upon which the estoppel claim is predicated required only proof of negligence or recklessness."

For a careful and correct statement regarding what constitutes a wilful and malicious injury, see *In re Fugazy,* 157 B.R. 761 (Bankr.S.D.N.Y. 1993), authored by the late Howard Schwartzberg, U.S.B.J.

27 (1991), and in recognition of the admonition that such inherent powers must be exercised with restraint and discretion. In examining the *Chambers* case we see the nature of the powers there at issue, and, consequently, the nature of the powers exercised here by the District Court. Among the inherent powers are the power to impose silence, respect, decorum, and submission to the Court's lawful mandates; the power to control admission to its Bar and discipline attorneys who appear before it; the power to punish for contempt, and the power to vacate its own judgment upon proof that a fraud has been perpetrated upon the Court. The inherent power utilized here by the District Court, acknowledged by the U.S. Supreme Court to be one of the inherent powers of the District Court, is that of fashioning an appropriate sanction for conduct which abuses the judicial process.

In this last regard, the Supreme Court noted that award of attorneys fees (thus departing from the so-called "American Rule") is appropriate when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or if the Court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," or when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a Court order." Id. at 32, 46, 111 S.Ct. at 2125-26, 2133. In this last regard, the Supreme Court stated that "the imposition of sanctions in this instance transcends a Court's equitable power concerning relations between the parties and reaches a Court's inherent power to police itself, thus serving the dual purpose of 'vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for the expenses caused by his opponent's obstinacy.' " Id. at 46, 111 S.Ct. at 2133.

■ The Supreme Court makes it clear that a requisite to the use of a District Court's inherent power to impose attorney's fees as a sanction is a finding of bad faith conduct.

■ In light of the language used by the District Court, and the authorities upon which the District Court based its decision, I am convinced as a matter of my independent judgment and discretion that the District Court made a finding of wilfulness and maliciousness on Huber's part, upon a proper record, and under standards sufficiently coincident with the standards that would be applied by this Court in an "original" action under 11 U.S.C. § 523(a)(6), that Marine is entitled to judgment if the other elements establishing collateral estoppel are present. Acts that are in bad faith, vexatious, wanton, and for oppressive reasons, are acts that are an intentional injury, without cause or excuse, and are thus both "wilful" and "malicious." (That issues be "identical" does not require that there be identical language.)

■ The same is true as to the sanctions decision of the State Supreme Court. When Huber sought sanctions against Marine and others under N.Y.Civ.Prac.L. & R. 8303-a, Marine cross-moved under the same provision.[13] That April 10, 1992 motion squarely placed before the State Supreme Court Justice the question of whether Huber should be sanctioned, and Huber had a full and fair opportunity to respond to that motion.

N.Y.Civ.Prac.L. & R. 8303-a, as explained by the State Supreme Court Justice in his January 19, 1993 decision, requires a finding of bad faith. Specifically, subsection c thereof states that "in order to find the action, claim, counterclaim, defense or crossclaim to be frivolous under subdivision (a) of this section, the Court must find one or more of the following: (i) the action, claim, counterclaim, defense or crossclaim was commenced, used or continued in bad faith, solely to delay or prolong the resolution of the litigation or to harass or maliciously injure another; (ii) the action, claim, counterclaim, defense or crossclaim was commenced or continued in bad faith without any reasonable basis in law or in fact and could not be supported by a good faith argument for an extension, modification or reversal of existing law. If the action, claim, counterclaim, defense or crossclaim

---

**13.** See Volume II, Exhibit H, to the Second Affidavit of George L. Cownie In Support of Ma-rine's Motions for Summary Judgment and to Strike Affirmative Defenses and Counterclaim.

was promptly discontinued when the party or the attorney learned or should have learned that the action, claim, counterclaim, defense or crossclaim lacked such a reasonable basis, the Court may find that the party or the attorney did not act in bad faith." Huber I, V, VIII at 16, 17.

In deciding to award sanctions, that Court stated that "Huber I, Huber III, Huber V and Huber VIII, as well as actions filed in the United States District Court for the Western District of New York: Huber II, Huber IV and Huber VII have all been dismissed on motions for summary judgment as meritless. *Also,* this Court finds that *Huber has commenced and continued baseless and meritless litigation in bad faith primarily to harass Marine, its employees and attorneys* in an attempt *to dissuade Marine from trying to collect on his student loans.* Besides the lack of merit in all of Huber's claims, there are several other factors clearly demonstrating Huber's bad faith and intention to harass Marine." Id. at 18.

The Court then examined several factors demonstrating Huber's bad faith. Indeed, at one point in that decision the State Court Justice stated, "Most revealing as to *Huber's bad faith and intent to harass and maliciously injure Marine and its attorneys*" was a certain letter from Huber to the attorneys dated March 26, 1992, which the State Court Justice referred to as follows: "Despite the appallingly unprofessional conduct by a lawyer exemplified by this letter, Huber, amazingly, still, has the temerity to move for sanctions against Marine's attorneys." Id. at 20.

As is the case with the sanctions award by the District Court, the present Court is convinced that the State Court found that Huber did maliciously and wilfully injure Marine; that that matter was properly before the State Court; and that it was adjudicated on a proper record and according to standards that deserve preclusive effect for § 523(a)(6) purposes, if the other elements of collateral estoppel are present.

■ The above analysis establishes that the issues sought to be precluded here are the same as those at issue in the prior actions; to wit, wilfulness and maliciousness. The next elements are that those issues be found to have been properly before those courts, actually litigated in a fair and full manner, and necessary to those courts' holdings. (There is a certain overlap among these elements in the case at bar.)

Despite the absence of trial with regard to the sanctions motion in the District Court, Marine is correct in its assertion that the issues decided by the sanctions decision were actually litigated and fully and fairly adjudicated. This is so because, as stated by the District Court, "Huber's sanctionable conduct has occurred either in the presence of the Court or in papers he has filed." [14] Specifically, all of the various actions brought by Huber against Marine and others were fully and fairly adjudicated in the nine plenary proceedings, to be without merit. He had the opportunity for discovery therein. His claims of wrongful conduct by others were heard and rejected. It was his refusal to accept those determinations, and his consequent filing of additional lawsuits in disregard of those determinations, that were among his sanctionable acts. His malicious intent was not only evident from his claims, but from his statements and threats, according to those Courts. Even his claim that the dismissals of his earlier suits were procured by fraud of Marine and its attorneys and employees was fully considered and rejected as baseless by the State Court Judge who dismissed the State Court actions. Indeed, Huber IX itself was an effort to relitigate in the federal forum the question of whether those dismissals had been obtained by fraud, and that is the very issue that Huber seeks to relitigate here in order to vindicate his actions. (He thinks that Judge Arcara was wrong in granting collateral estoppel effect to Judge Doyle's rejection of Huber's claims of fraud.)

Everything upon which the sanctions awards were based was a matter of record or had been fully and fairly adjudicated prior thereto, and no further hearing was required other than as to the amount of attorneys fees: both the state and federal courts pro-

14. See footnote 4 in the District Court's Decision dated September 4, 1992.

vided to Huber the opportunity for a full hearing on the matter of the amount of the award.

■ The only purpose a trial would have served in the sanctioning courts would have been to permit Huber to place his self-serving denials of bad faith on the record. The sanctioning courts obviously believed that they, as factfinders, would not benefit from a trial on that subject.[15]

■ Consequently, the issues before the sanctioning courts are not to be relitigated here. The matter of sanctions was properly before those courts. Findings of intentional, bad faith conduct that was designed to injure Marine were indeed "necessary" to those courts' holdings. And, as noted above (at footnote 4), although only a "fair preponderance" standard is required under § 523(a)(6), the sanctioning Courts (acting as the finders of fact upon the sanctions requests) manifested not even the slightest trace of doubt as to Huber's intentions.

There is nothing to be tried here that has not already been properly resolved against Huber.[16]

### CONCLUSION

Before rendering its decision, the Court will note (only in passing) that similar issues have been addressed under different statutory provisions than those briefed and argued here, sometimes with similar results.

Thus, there is a suggestion in at least one case[17] that resort to Bankruptcy Court cannot relieve a debtor from being held responsible to a U.S. District Court in civil con-

tempt. "This court has already determined that defendant violated two direct orders of this Court. ... The court cannot conceive that Congress intended to ... permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge," that District Court said. It concluded that its authority to impose an appropriate sentence for civil contempt, at least to coerce *future* compliance, was not impaired by the bankruptcy filing. Likewise, in the present case it is clear that the sanctions orders were in part to uphold the processes of the Court of which this Bankruptcy Court is a "unit."

And consider the debate regarding the applicability of 11 U.S.C. § 523(a)(7) to civil contempt awards even when such awards are payable to the opposing party.[18] An excellent analysis of that debate is contained at *In re Wood,* 167 B.R. 83 (Bankr.W.D.Tex.1994) (which case also would be virtually identical to the case presently at Bar were it not for the fact that in that case the District Judge's sanctions Orders were based on a Magistrate–Judge's Report and Recommendation with regard to matters that were "actually tried before him").

Summary judgment in favor of Marine is granted. Judgment shall enter declaring the sanctions obligations non-dischargeable. Since Huber's discharge has entered, Marine is now free to enforce against Huber these non-dischargeable debts. (11 U.S.C. § 362(c)(2)(C)).

SO ORDERED.

---

**15.** If there is any authority for the proposition that Huber is entitled to a jury trial on the issues addressed in the sanctions motions, he has not cited it. The sanctions at issue are similar to awards for civil contempt, and it is clear that civil contempts may be punished summarily; see 47 Am.Jur.2d, Jury § 54 (1969), and 17 Am.Jur. 2d, Contempt §§ 193–203, 216–219 (1990).

**16.** To the extent that Huber might suggest that the sanctions findings are not "final" determinations, the suggestion is rejected. He took the District Court's decision to the Circuit Court of Appeals and lost. He asked the State Court to vacate its decision and lost. The appeals times

have expired. (Actions by a Debtor are not stayed by 11 U.S.C. § 362.)

**17.** *U.S. Sprint Comm. Co. v. Buscher,* 89 B.R. 154 (Kan.1988); See also the "Unpublished Disposition" of *Phipps v. Commonwealth of Ky.,* 980 F.2d 730 (6th Cir.1992).

**18.** 11 U.S.C. § 523(a)(7) excepts from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss ..." with certain exceptions not here relevant.